El Juez Presidente Sr. Del Toro no intervino.

LORENZA ROSARIO, representada por su apoderado ALFREDO CORTÉS, demandante y apelada, *v.* SANTIAGO RUIZ LÓPEZ y su esposa VICTORIA LAABES ACEVEDO, demandados; y VALENTÍN POLANCO DE JESÚS, apelante.

Núm. 8670.—*Sometido:* Mayo 5, 1943. *Resuelto:* Julio 7, 1943.

*V. Polanco de Jesús, pro se; Ángel Rivera Colón,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

· El 4 de marzo de 1931 Santiago Ruiz y su esposa, dueños de dos fincas que en adelante denominaremos *A* y *B*, otorgaron una hipoteca a favor de Ventura Cortés y su esposa Lorenza Rosario, para garantizar un préstamo de $7,000 héchole a Ruiz por Cortés. Dicho préstamo se pagaría en plazos anuales de $1,000, venciendo el último plazo el 4 de marzo de 1938, con intereses a pagarse a razón del 12 por ciento anual por el término del préstamo y el de demora hasta su efectivo pago. También se disponía el pago de costas y honorarios de abogadò hasta $520. Cuando se disolvió en 1937 la sociedad de gananciales de Cortés y su esposa, Lorenza Rosario, a esta última le fué adjudicado íntegramente dicho crédito hipotecario.

El 5 de mayo de 1942 Lorenza Rosario radicó demanda contra Ruiz y su esposa para recobrar la suma principal de $7,000, más intereses al 12 por ciento anual desde el primero de enero de 1937 hasta el 30 de abril de 1942. También solicitaba el reembolso de $138.12 y $19.32, cantidades pagadas por ella para redimir las fincas *A* y *B* vendidas en pública subasta por contribuciones adeudadas. Solicitaba que las fincas hipotecadas se vendiesen en pública subasta para satisfacerle las sumas expresadas. Los demandados contestaron, admitiendo los hechos expuestos en la demanda, excepto que alegaban que se debían intereses solamente desde el primero de septiembre de 1937. El 26 de mayo de 1942, aparentemente con la conformidad de la demandante, la corte de distrito dictó sentencia según se solicitaba en la demanda, excepto que concedió intereses solamente desde el primero de septiembre de 1937.

En 23 de septiembre de 1942 la demandante radicó una moción alegando que las dos fincas en cuestión fueron adjudicadas a ella en la subasta pública ordenada por la corte de distrito en la referida sentencia, pero cuando intentó inscribir su escritura en el Registro, encontró que la finca *A* estaba inscrita a nombre de Valentín Polanco de Jesús, re-

sultando de dicha inscripción que Polanco había adquirido la propiedad en una subasta pública por escritura otorgada en 26 de junio de 1942 e inscrita en 3 de agosto de 1942. Alegando que Polanco era un comprador *pendente lite,* la moción solicitaba que se notificara a éste que, a menos que pagara la porción de la deuda hipotecaria—$4,000—y las costas y honorarios de abogado—$240—que fueron garantizados expresamente por la finca *A* en la escritura de hipoteca, la inscripción de dicha finca *A* a su nombre sería cancelada. Polanco radicó una moción admitiendo que tenía que pagar la suma principal de $4,000, pero alegando que, de conformidad con la Ley núm. 92, Leyes de Puerto Rico, 1938, no se podían cobrar intereses sobre la hipoteca en exceso del tipo legal. Polanco ha apelado de la resolución de la corte inferior declarando sin lugar su moción y declarando con lugar la de la demandante.

■■ Consideraremos en primer término la moción de la apelada para que se desestime el recurso por los fundamentos (*a*) que la resolución de la corte inferior no es apelable, y (*b*) que el escrito de apelación no fué notificado a los deudores hipotecarios. Esta corte ha resuelto estas dos cuestiones en contra de la contención de la apelada en *González v. Ortiz,* 45 D.P.R. 287. Además de resolver en dicho caso que tal resolución era apelable, dijimos a la pág. 289 que "una vez adjudicada la finca al acreedor hipotecario [el deudor hipotecario] no tiene interés alguno en que se cancele o se deje de cancelar la inscripción que aparezca en el registro a favor de una tercera persona sobre el dominio de dicho inmueble". Toda vez que los deudores hipotecarios no tenían interés en la apelación en este caso no había necesidad de notificarles la misma.

■ Pasamos a los méritos de la apelación. Polanco alega que desde que la Ley núm. 5, Leyes de Puerto Rico, 1933, Sesión Extraordinaria (Leyes de 1933 (2) pág. 27), pero más en particular desde que la Ley núm. 92, Leyes de

Puerto Rico, 1938 (pág. 210), fué aprobada, no se pueden reclamar intereses en exceso del tipo legal en ellas fijado. Asumimos, sin resolverlo, que un extraño a la alegada transacción usuraria, en una situación similar a la de Polanco, puede levantar esta defensa. Y una disposición expresa en el contrato en cuanto al pago del tipo convenido de intereses después de vencida la obligación, se considera como parte del contrato original, aún después de su vencimiento, hasta su completo pago (*Cabrera v. Morales,* 57 D.P.R. 457).

Por tanto, nos remitimos a la única cuestión sustancial levantada por esta apelación; o sea, que la disposición de la Ley núm. 92 de que ''Cualquier persona . . . que como prestamista exija o reciba en o por cualquier contrato, convenio u obligación . . . dinero a un tipo de interés mayor de nueve (9) dólares anuales sobre cada cien (100) dólares . . . será culpable de delito menos grave . . . '' tenía el efecto de privar a la apelada de su derecho a cobrar intereses a un tipo mayor de 9 por ciento en un contrato que, como en el presente caso, fué otorgado con anterioridad a la aprobación del estatuto y el cual expresamente disponía un tipo mayor de interés. Esta corte ha resuelto que ''La Ley núm. 5 aprobada en 17 de agosto de 1933, enmendó la del primero de marzo de 1902, reduciendo a 9 por ciento y 8 por ciento el tipo de interés, según la cuantía de la obligación. Dicha ley, aun cuando empezó a regir inmediatamente después de su aprobación, no puede ser aplicada a una obligación contraída con anterioridad a dicha fecha.'' (*Rivera v. Durán,* 59 D.P.R. 491, 4.) Al mismo efecto, *Toscano v. Pomales,* 60 D.P.R. 335; *Caraballo v. Registrador,* 48 D.P.R. 923. Aunque en el caso de *Durán* no se mencionada la Ley núm. 92 de 1938, dicha ley se había aprobado ya cuando se resolvió el referido caso, y a pesar de ello no afectó el resultado del mismo. Al igual que en el caso de la Ley núm. 5 de 1933, nada hallamos en la Ley núm. 92 que justifique la conclusión de que fué la intención que se aplicara a los contratos otorgados

con anterioridad a su aprobación. Por tanto, no es necesario que consideremos en este caso el problema de la validez de tal actuación legislativa, toda vez que ésta hasta el presente no ha dado paso alguno para aprobar un estatuto de tal naturaleza.

 Sin embargo, la corte de distrito cometió error al ordenar al apelante que pagara toda la deuda hipotecaria con el fin de evitar la cancelación de la inscripción a su nombre de la finca A. La hipoteca original cubría las fincas A y B. Aunque la escritura de hipoteca no está en autos, parece que las partes están de acuerdo en cuanto a que disponía que la finca A garantizaría $4,000 de los $7,000 de la deuda hipotecaria y $240 de los $520 provistos en la escritura para costas y honorarios de abogado. Toda vez que el apelante reclama solamente la finca A, tiene derecho a conservar la inscripción de la misma a su nombre mediante el pago a la demandante de (1) $4,000, más intereses al 12 por ciento desde el 1 de septiembre de 1937 hasta el 26 de mayo de 1942, fecha de la sentencia de la corte de distrito; (2) $138.12, cantidad pagada por la demandante por contribuciones adeudadas e intereses, más intereses al 12 por ciento desde el 16 de diciembre de 1941, fecha en que se pagó dicha suma, hasta el 26 de mayo de 1942([1]) ; (3) intereses legales al 6 por ciento sobre $4,138.12 desde la referida fecha de la sentencia, 26 de mayo de 1942, hasta la fecha de su pago([2]) ; y (4) $240 para costas y honorarios de abogado.

[1] El artículo 348 del Código Político lee en parte como sigue:

" . . . Cuando se redimiere la propiedad por un acreedor hipotecario, el dinero pagado por éste para redimir la propiedad se acumulará a su crédito hipotecario, y podrá recobrarse al mismo tipo de interés que devengue el crédito hipotecario . . . "

[2] El tipo de 12 por ciento de la deuda hipotecaria provisto en el contrato y el mismo tipo sobre el precio de compra de conformidad con el artículo 348 del Código Político se reduce al tipo legal de 6 por ciento cuando ambas deudas desaparecen como resultado de su consolidación (*merger*) en la sentencia de 26 de mayo de 1942. (*Franceschi Ex parte*, 53 D.P.R. 75; *O'Brien* v. *Young* 95 N. Y. 428; *United States Mortgage Co.* v. *Sperry*, 138 U. S. 313, 352; *Hiller* v. *Matheny*, 256 Pac. 10 (Colo., 1927)).

*Según modificada en la forma antes indicada, la resolución de la corte de distrito será confirmada.*

El Juez Presidente Sr. Del Toro no intervino.

EN MOCION DE RECONSIDERACION

Julio 21, 1943.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Al dictar sentencia en este caso, incluímos la cantidad de $240 para costas y honorarios de abogado de conformidad con la disposición expresa a ese efecto contenida en la escritura de hipoteca aquí envuelta. Sin embargo, en su moción de reconsideración el apelante llama nuestra atención al hecho de que la corte inferior se negó a conceder honorarios de abogado en este caso, y que no se apeló de tal pronunciamiento de la corte de distrito. Por tanto, *modificaremos nuestra sentencia anterior eliminando la concesión de honorarios de abogado.*

El Juez Presidente Sr. Del Toro no intervino.