ANA VALDÉS MONAGAS, demandante y apelada, *v.* F. A. C. HASTRUP, demandado y apelante.

Núm. 8957.—*Sometido:* Diciembre 5, 1944. *Resuelto:* Febrero 23, 1945.

*Edgar S. Belaval,* abogado del apelante; *Lionel Fernández Méndez* y *Juan A. Faría,* abogados de la apelada.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Ana H. Valdés Monagas y F. A. C. Hastrup contrajeron matrimonio en 1906. En 1936 la esposa entabló demanda de divorcio por trato cruel. Mientras estaba pendiente el pleito de divorcio, las partes radicaron una estipulación, conviniendo, entre otras cosas, que en caso de concederse el divorcio, el esposo le pagaría a la esposa una pensión alimenticia de $100 mensuales hasta fines de 1938, $150 mensuales hasta fines de 1939, y en lo sucesivo $200 mensuales hasta la muerte de cualquiera de las dos partes o hasta que la esposa se volviera a casar. La estipulación específicamente disponía que no entraría en vigor a menos que la corte de distrito la aprobara en su totalidad. La corte inferior aprobó la estipulación y la incorporó a su sentencia del 5 de febrero de 1938 concediendo el divorcio. La demanda en el presente caso fué radicada por la esposa el 22 de agosto de 1941 reclamando $2,800 por haber dejado el

marido de pagar las últimas catorce mensualidades. Después de un juicio en los méritos, la corte de distrito dictó sentencia a favor de la demandante por $2,800, costas y honorarios de abogados ascendentes a $100. El caso se encuentra ante nos en apelación contra dicha sentencia.

■ El apelante alega primeramente que la corte de distrito cometió error al declarar sin lugar su defensa especial de estar pendiente otro procedimiento entre las mismas partes y sobre el mismo objeto. Esta defensa se predicó en la demostración de que se había iniciado un procedimiento de desacato dentro del caso de divorcio basado en los mismos hechos aquí alegados. Convenimos con la corte de distrito en que el procedimiento de desacato, instituído para castigar al demandado por dejar de cumplir con la sentencia de la corte, no puede interponerse como defensa contra los esfuerzos de la esposa para cobrar los pagos vencidos. La naturaleza de tal procedimiento de desacato, tal y como se contradistingue de una acción en cobro de las mensualidades, fué considerada en una elaborada opinión en *Villa* v. *Corte de Distrito,* 45 D.P.R. 879. Existe un derecho, el derecho de la esposa a su manutención. Se pueden emplear dos maneras de obligar su cumplimiento. La primera es el castigo por el Estado por dejar de cumplir la sentencia de la corte; la segunda es el pleito entablado por la esposa en cobro de las mensualidades. Aparte de que las cuestiones envueltas en los dos casos son algo diferentes,[1] el permitir que prevalezca esta contención menoscabaría el poderoso efecto del procedimiento de desacato para obligar al pago en tales casos. Una esposa no estaría inclinada a radicar un procedimiento de desacato si al así hacerlo se le obligara a descansar únicamente en el mismo para obtener el pago, y con ello

---

[1] "... no debe encarcelarse a una persona condenada al pago de alimentos a menos que se demuestre una voluntaria y obstinada desobediencia a las órdenes de la corte". (*Villa* v. *Corte de Distrito,* supra, pág. 900). Por el contrario, sólo se necesita prueba de que no se han hecho los pagos para obtener la sentencia en este caso.

renunciar a otros medios, tales como el pleito en cobro de las mensualidades y el embargo de bienes, para asegurar el pago. La ley le da a la esposa bajo tales circunstancias dos medios de obligar el cumplimiento de la sentencia de la corte. Tiene derecho a hacer uso de cualquiera de ellos o ambos. No sabemos de principio alguno en cuanto a casos pendientes, *res judicata* o doctrinas afines que le dé al esposo la elección de ir a la cárcel por desacato, y con ello impedir que la esposa emplee los remedios civiles que de otro modo podría emplear para obtener el pago de las mensualidades.[2]

El apelante ataca después la sentencia en el caso de divorcio, por ser nula y sin valor alguno, en tanto en cuanto disponía el pago por el esposo a la esposa de una mensualidad como pensión alimenticia. El primer fundamento para esta contención es que cuando la sentencia de divorcio se dictó, el esposo no tenía bienes. El apelante se basa en *Frías* v. *Hernández,* 35 D.P.R. 696, en el que resolvimos que de conformidad con el artículo 109 del Código Civil, la pensión alimenticia permanente sólo puede concederse de los bienes que sean de la propiedad del marido y no de las ganancias corrientes que resulten del trabajo.[3] Pero nada hay en el caso de *Frías* al efecto de que un marido pueda alegar por vía de defensa en un caso independiente para el pago de mensualidades vencidas a tenor con una sentencia final de la cual el marido no apeló, que la sentencia original era nula porque él no poseía bienes cuando se dictó dicha sentencia. Si hubiera querido, el demandado pudo haber levantado en el pleito original la cuestión de hecho de que no poseía bienes y por tanto que no se le podía exigir que mantuviera a su esposa después del divorcio. En contrario, el demandado convino en una estipulación en que se dictara sentencia proveyendo tal manutención. Y después de dic-

---

[2] *Cf. Municipio* v. *Ríos,* 61 D.P.R. 102; *Laloma* v. *Fernández,* 61 D.P.R. 569; *Vázquez* v. *Santos,* 54 D.P.R., 618, 624–25; casos citados en *Pueblo* v. *Lugo Irizarry, ante,* pág. 554.

[3] Al mismo efecto, *Planas* v. *Chambers,* 64 D.P.R. 55.

tarse la sentencia se avino a ella y realizó un número de pagos de conformidad con la misma. No procede el que determinemos en este caso si el marido, habiendo estipulado los términos de la sentencia, puede no obstante solicitar dentro del caso de divorcio original que se modifiquen los términos de la sentencia por los motivos que ahora levanta en cuanto a los hechos que rigen sus bienes. Sólo resolvemos que en el pleito independiente en cobro de las pensiones ahora ante nos, no procede, bajo las circunstancias de este caso, un ataque colateral alegando nulidad de la disposición para la manutención en una sentencia de divorcio dictada por consentimiento en un caso en que la corte inferior tenía jurisdicción. (Véanse *Ex parte Morales,* 17 D.P.R. 1043, 1045; *Lókpez* v. *Fernández,* 61 D.P.R. 522).

■ El apelante expone un segundo motivo para sostener su contención de que la sentencia por pensión alimenticia es nula y sin valor alguno. Su teoría aquí es que la estipulación era nula porque era un contrato entre marido y mujer, citando *Delgado* v. *Monroig,* 57 D.P.R. 474. Pero dicho caso envolvía solamente el derecho de los cónyuges, mientras estaba pendiente un caso de divorcio, a efectuar un contrato privado disponiendo de los bienes gananciales. Esta corte confirmó una sentencia desestimando la demanda radicada por el marido después del divorcio solicitando cumplimiento específico de dicho convenio. Resolvimos que tal contrato estaba expresamente prohibido bajo tales circunstancias por las disposiciones del artículo 1347 del Código Civil.

El que la estipulación entre el marido y la mujer en este caso sea un contrato y de serlo, si es nula y sin valor alguno, presenta una cuestión enteramente diferente. En verdad las disposiciones del artículo 1347 no son de aplicación. De cualquier modo, no tenemos que contestar dicha pregunta en este caso. Lo que se impugna aquí no es la estipulación de las partes, sino la sentencia de la corte de distrito. Pero la alegada obligación y la estipulación reconociéndola se fun-

dieron (*merged*) en la sentencia (*Bird* v. *Roig*, 21 D.P.R. 407, *Rosario* v. *Ruiz*, 62 D.P.R. 326; véase *Pueblo* v. *Lugo Irizarry*, supra; *Pope* v. *United States*, 323 U. S. 1, resuelto en noviembre 6, 1944). Como hemos visto, la corte de distrito tenía jurisdicción para dictar sentencia proveyendo alimentos para la esposa. Por tanto, la sentencia no es nula, y por las razones ya expuestas no puede ser impugnada colateralmente. No nos concierne aquí si el marido todavía tiene el camino expedito para solicitar se modifique la sentencia de divorcio en un procedimiento dentro de dicho caso.

■ El apelante también señala como error el hecho de que la corte inferior rechazó su contención de que la demanda no aducía hechos suficientes para constituir una causa de acción. Su primer punto aquí es que una acción ordinaria no procede en Puerto Rico para el cobro del dinero que se adeude a tenor con una sentencia. Puede admitirse en seguida que tal pleito es innecesario en el caso ordinario; el cobro puede efectuarse simplemente ejecutando la sentencia original. Pero aunque parezca ser un inútil formalismo, esta corte en el pasado ha permitido tales pleitos. (*Tettamanzi et al.* v. *Zeno*, 24 D.P.R. 775; *Candal* v. *Pierluisi et al.*, 28 D.P.R. 606).

Nos damos cuenta de los motivos que tuvieron los abogados de la esposa para sentirse inseguros en cuanto a si ella tenía derecho a ejecutar la sentencia original. (Véase *Barber* v. *Barber*, 323 U. S. 77, resuelto el 4 de diciembre de 1944). De cualquier modo, si bien pudo haber sido innecesario el que la esposa radicara el pleito independiente, no podemos ver de qué manera se perjudica el apelante permitiendo que se siga dicho método.

■ El otro fundamento de la referida excepción previa alegando que los hechos aducidos en la demanda eran insuficientes, fué que no procede un caso independiente porque la sentencia original no tenía carácter definitivo, toda vez

que tal concesión siempre está sujeta a modificación por la corte. La mejor contestación a dicho argumento es que de acuerdo con la regla de la mayoría en los Estados Unidos continentales este poder de modificación sólo se extiende a alimentos futuros, y no a mensualidades ya vencidas. Anotación, 94 A.L.R. 331; *Barber* v. *Barber,* supra; *Sistáre* v. *Sistare,* 218 U. S. 1; *Adair* v. *Superior Court,* 33 P. (2) 995 (Ariz. 1934). Nuestro estatuto se copia de Louisiana, que sigue la regla de la mayoría. *Snow* v. *Snow,* 177 So. 793 (La. 1937); *Cotton* v. *Wright,* 190 So. 665 (La. 1936).

■ Finalmente, el apelante alega que la esposa estaba obligada a probar que no se había vuelto a casar antes de vencerse los pagos en cuestión, cosa que no probó. Asumimos que ella estaba obligada a probar esto. Pero creemos que cumplió con este requisito. Es verdad que la única declaración sobre este punto fué la de su cuñado, quien declaró que va anualmente a Nueva York donde vive la demandante; que ésta vive con su hija; y que el testigo sabe que ella está soltera. El testigo declaró en el contrainterrogatorio que no había visto a la demandante durante los últimos catorce meses. Sobre este punto el demandado no presentó prueba alguna. Pero no podemos ver de qué manera esto nos obliga a concluir que la demandante se hubiera casado otra vez. Quizá hubiera sido más aconsejable si se hubieran tomado deposiciones a la demandante y a otras personas en Nueva York. Pero nada encontramos en el récord que nos autorice a alterar la conclusión de la corte inferior, basada en testimonios competentes, de que la demandante no se había vuelto a casar.

*La sentencia de la corte de distrito será confirmada.*