CAROLINA GARCÍA TUYA, peticionaria, *v.* TRIBUNAL DE DISTRITO DE SAN JUAN, HON. ANTONIO R. BARCELÓ, JUEZ, demandado; RAFAEL FERRER, interventor.

Núm. 1766.—*Sometida:* Diciembre 1, 1948. *Resuelto:* Enero 28, 1949.

*E. T. Fiddler, José G. González, Tomás I. Nido* y *Mariano Canales,* abogados de la peticionaria; *Wilson P. Colberg,* abogado del interventor, demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En la acción de divorcio entablada por Carolina García Tuya contra su esposo Rafael Ferrer, el Tribunal de Distrito

de San Juan fijó la pensión alimenticia que el demandado debía pasar a la demandante, para ella y para su hijo menor de edad habido en el matrimonio, en la suma de $200 mensuales. El demandado cumplió con dicha orden durante varios meses. La demanda en la acción de divorcio fué desestimada y la demandante apeló para ante este Tribunal.

Después de haberse apelado y allá para el 25 de junio de 1947, el demandado radicó en la corte inferior una moción sobre "Rendición de Rentas Cobradas" (sic) en la que solicitaba que la demandante informara los contratos de arrendamiento y las rentas cobradas por ella en relación con la casa radicada en la Calle McKinley núm. 12 en Santurce, propiedad conyugal, fijada como residencia de la demandante por la corte durante la tramitación del divorcio.

El 11 de julio de 1947 la demandante radicó en la corte inferior una moción solicitando que la corte ordenara al demandado depositara $325 para los honorarios del taquígrafo, y $500 para los gastos judiciales incluyendo honorarios de abogado, todo ello en relación con el recurso de apelación entablado por la demandante. El demandado se opuso a esta moción alegando que carecía de recursos para satisfacer dichos gastos.

El 2 de septiembre de 1947 las partes radicaron y la corte inferior aprobó una estipulación, la cual, en lo pertinente al presente recurso, dice así:

"1. Que las partes han acordado que el menor Rafael Pablo Ferrer García asista a la Academia Militar de Staunton, municipalidad de Staunton, Estado de Virginia, durante el presente curso escolar, y los sucesivos, si la Academia lo permitiera. . . .

"3. Que todos los gastos y desembolsos en que incurra dicho menor durante el tiempo que asista a dicha Academia, serán de cuenta y cargo de su padre, incluyendo la transportación de dicho menor desde Puerto Rico hasta el punto de destino y su regreso a esta Isla cuando termine dicho curso. . . .

"6. Las partes acuerdan que durante el tiempo en que dicho menor se encuentre en los Estados Unidos la pensión asignada por este Hon. Tribunal a los demandantes en la cantidad de $200 men-

suales será reducida a la cantidad de $100 mensuales, disponiéndose que inmediatamente que dicho menor regrese a la Isla de Puerto Rico por cualquier concepto la referida pensión ascenderá automáticamente a la cantidad original de $200.00.

'''7. Es entendido además entre las partes que no se renuncia ningún derecho que puedan tener en virtud de las disposiciones del Código Civil aplicables a la presente situación.''

El día 18 de diciembre de 1947 el demandado radicó una moción solicitando de la corte que redujera la pensión alimenticia que debía pasarle a la demandante de $100 a $25 mensuales, alegando como único fundamento para ello, que los gastos en que incurre el hijo menor en su colegio ''exceden prácticamente las entradas mensuales que tiene este demandado, incluyendo la cantidad indispensable para él para sus gastos personales.''

El 8 de enero de 1948 la demandante radicó las cuentas que había solicitado el demandado en relación con el arrendamiento de la casa que ocupa.

El 29 de marzo la corte inferior dictó resolución en la cual resolvió, tanto la moción de la demandante sobre *litis expensas* en relación con la apelación interpuesta por ella contra la sentencia que desestimó su demanda de divorcio, como la moción del demandado solicitando se rebajara la pensión alimenticia de $100 a $25 mensuales. La parte dispositiva de dicha resolución dice así:

''(a) Que el demandado pase a la demandante una pensión alimenticia para sí de $25 mensuales; siendo esta disposición retroactiva a la fecha de la radicación de la moción del demandado sobre reducción de pensión alimenticia, o sea, diciembre 18 de 1947, y disponiéndose que tan pronto el menor Rafael Ferrer García regrese al lado de su madre, la demandante, el demandado deberá pasar una pensión alimenticia para su hijo, por conducto de la demandante, montante a la suma de $100 mensuales, en adición a los $25 mensuales que viene obligado a pasar a la demandante para sí.

''(b) El demandado depositará en la Secretaría de este Tribunal la suma de $325 para cubrir el importe de los honorarios del taquígrafo por la transcripción del récord para la apelación instada por

la demandante contra la sentencia de este Tribunal en el caso principal de divorcio, en el caso del epígrafe, y de la cual suma le serán satisfechos al taquígrafo de este Tribunal Antonio Cortés Hernández, por la Secretaría del mismo, el importe de sus honorarios de acuerdo con el arancel que deberá calcular la referida Secretaría de este Tribunal. La dicha suma de $325 la depositará el demandado dentro del término de veinte (20) días, a partir de la notificación de esta resolución.

"(c) Además se ordena al demandado que dentro del término de veinte (20) días, a partir de la notificación de esta resolución, deberá depositar en la Secretaría de este Tribunal la suma de $300 para cubrir el importe de otros gastos judiciales y honorarios de abogado de la demandante en dicha apelación; y pudiendo dicho demandado descontar de la referida suma las cantidades que en exceso de $25 mensuales hubiere depositado a partir del 1ro. de enero de 1948 para los alimentos exclusivamente de la demandante."

Solicitó la demandante la reconsideración en cuanto a los apartados (a) y (c), supra, y le fué denegada. A petición suya, expedimos el auto de *certiorari* en este caso para revisar la actuación de la corte inferior.

La única prueba que tuvo ante su consideración la corte para dictar la resolución recurrida fué la declaración prestada por el demandado en la vista celebrada al efecto, y a la cual no compareció la demandante, pero sí su abogado, y las cuentas rendidas por la demandante.

De acuerdo con dicha evidencia la corte consideró probados los siguientes hechos:

Que el demandado posee bienes con un valor aproximado de $70,000, los cuales rentan $7,284 anuales; que de esas rentas el demandado tiene que pagar por concepto de contribuciones, reparaciones, conservación, agua, luz, *janitor* y administración de sus propiedades la suma total de $2,988.36 anuales, quedando por tanto, una renta líquida de $4,295.64 o sean $357.97 mensuales; que para pagar los gastos de educación de su hijo tuvo que hacer un préstamo a un banco por $2,000 obligándose a solventarlos a razón de $500 trimestrales o sea $166.66 mensuales; que esta suma incluye únicamente

los gastos del primer semestre de matrícula y no incluye otros gastos incidentales de su hijo que ascienden a $25 mensuales; que el demandado necesita $75 al mes para sus gastos personales; le da a su señora madre $50 mensuales por él vivir con ella; que deposita mensualmente en el Banco de Nova Scotia la suma de $33.34 en una cuenta especial a nombre de su hijo, lo que ha venido haciendo desde que éste nació; ([1]) que paga a un chófer $20 mensuales por dos horas de trabajo diarias y $20 gasta en gasolina, aceite, etc. para su automóvil.

Hizo constar la corte que la prueba no había sido contradicha por la demandante y que le daba entero crédito al testimonio del demandado y concluyó que "el mismo demuestra que no está en condiciones económicas para seguir pagando la pensión mensual de $100" a la demandante de acuerdo con la estipulación entre las partes, "si tomamos como base únicamente los ingresos del demandado, una vez descontados los gastos y desembolsos justificados."

Hace entonces referencia la corte a una resolución suya de octubre 21 de 1947 (la cual no consta en los autos de este recurso) y en la cual dice que resolvió que si bien se probó que el demandado carece de ingresos suficientes, sin embargo tiene bienes de fortuna, que ahora tasa en $70,000. Se refirió además al estudio comparativo que hizo de los artículos 100, 109, y 146 del Código Civil en los cuales la base para calcular la capacidad para proveer alimentos se señala con referencia a los *"bienes,"* los *"recursos"* y las *"rentas"*, respectivamente. ([2]) (El artículo 109 es claramente inaplicable al caso de autos pues la demandante no obtuvo el divorcio.)

Para determinar si procedía rebajar la pensión alimenticia la corte inferior procedió entonces a considerar si la

---

([1]) En dicha cuenta hay depositados $6,200.

([2]) Estos artículos disponen:

"Artículo 100. Si la mujer no contase con suficientes recursos propios para vivir durante el juicio, la corte de distrito ordenará al marido que le pase una pensión alimenticia en proporción a los bienes de éste."

"Artículo 109. Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, la corte de distrito puede asignarle alimentos dis-

demandante no contaba con suficientes recursos propios para vivir durante el juicio, artículo 100, Código Civil, supra; *Manrique de Lara* v. *Garrosi*, 23 D.P.R. 408; *Auge* v. *Solosse*, 31 D.P.R. 879; y al efecto tomó en consideración y analizó las cuentas rendidas por la demandante tres días después de celebrada la vista sobre el incidente que estaba resolviendo y llegó a la conclusión de que la demandante tiene una entrada neta de $150 mensuales en concepto de arrendamiento del sótano de la casa, propiedad de la sociedad de gananciales, que ella vive. Este hecho, unido a los gastos que declaró tenía el demandado—y los aceptó todos como justificados y legítimos—fué lo que indujo a la corte a rebajar la pensión de $100 a $25 mensuales.

La prueba que tuvo ante su consideración la corte inferior no fué contradicha. La demandante no refutó en absoluto la declaración prestada por el demandado en cuanto a sus ingresos y gastos. Tampoco el demandado objetó o contradijo en forma alguna las cuentas rendidas por la demandante. De lo único que se queja la demandante al discutir el tercer error señalado, es de que la corte erró al rechazar cierta parte de las cuentas en la cual se hace constar las deudas en que ella incurrió para poder arreglar y amueblar el sótano para poder alquilarlo, la cual deuda aún ella está solventando mensualmente y la conclusión errónea, por tanto, a que llegó la corte de que ella percibe $150 netos mensualmente como producto de los arrendamientos de dicho sótano.

En cuanto a este último aspecto del caso creemos que la demandante tiene razón. Sin prueba en contrario, la corte no tenía base para rechazar aquella parte de las cuentas ren-

crecionales de los bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia de la tercera parte de la renta de aquéllos.

''La pensión alimenticia será revocada si llegase a hacerse innecesaria, o cuando la mujer divorciada contrajese segundo matrimonio.''

''Artículo 146. La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo.''

didas por la demandante que tendían a demostrar los gastos y deudas en que había incurrido y eso no obstante resolver que sus ingresos netos mensuales acienden a $150 mensuales. Resalta el hecho de que la corte aceptó como cierta toda la declaración del demandado incluyendo las deudas en que dijo había incurrido, además de sus gastos, por el hecho de que la demandante no presentó prueba en contrario. La misma regla debió aplicar al considerar las cuentas de la demandante o haber exigido prueba adicional si tenía alguna duda en cuanto a alguna partida. No sólo no hizo esto, sino que, sin autoridad para ello, rebajó la partida en la cual la demandante especificó los gastos incurridos para arreglar el sótano y valoró por su cuenta ciertos artículos—una máquina de lavar y una nevera—y dedujo dicha valoración del total. Tampoco estaba autorizada la corte en rechazar, sin tener prueba que lo justificara, el montante de las deudas que la demandante especificó en sus cuentas que aún tenía que pagar con cargo a sus ingresos. No tuvo prueba en contrario a las deudas del demandado y sin embargo las aceptó. No vemos razón para una y otra forma de actuar.

En resumen y en cuanto a este aspecto del caso, creemos que de acuerdo con la prueba que tuvo ante su consideración, la corte erró al resolver que la demandante tenía un ingreso neto de $150 mensuales, además de la pensión alimenticia de $100 que percibía del demandado y, como consecuencia, que abusó de su discreción al rebajar dicha pensión a $25 mensuales. Si bien hemos resuelto que ". . .debe darse considerable libertad o discreción a la corte sentenciadora" al fijarse la cuantía de la pensión alimenticia y *litis expensas*, *Rigau v. Corte*, 56 D.P.R. 209, esto no significa que las cortes puedan ir más allá de la prueba presentada y tampoco que puedan aceptar como justificados gastos que claramente no tienen tal concepto en un caso de esta naturaleza.

Como éste habrá que devolverlo a la corte inferior para ulteriores procedimientos, creemos necesario llamar la

atención hacia algunas partidas de egresos del demandado que no deben ser tomadas en consideración al fijarse, en definitiva, la cuantía de la pensión alimenticia que tiene derecho a percibir la demandante. Nos referimos a aquella de $33.34 mensuales que el demandado deposita a favor de su hijo en una cuenta de ahorros. No importa cuán laudable sea, y lo es en grado sumo, esta actuación del demandado como buen padre, si se justificara que la madre no cuenta con suficientes recursos para su subsistencia, no debe tomarse en consideración dicha partida para determinar la capacidad económica del demandado. En igual forma, los gastos del chófer y de la gasolina, tampoco pueden tener preferencia: Si bien la corte puede tomar en consideración otras obligaciones del marido, siempre debe considerar primero a la esposa. Artículos 143 y 144 del Código Civil y lo resuelto en *Echandi* v. *Parés,* 57 D.P.R. 171.

 En cuanto al primer error señalado, es decir, el haber dispuesto la corte en su resolución, que los efectos de dicha rebaja debían retrotraerse a la fecha de la radicación de la moción del demandado, actuación que sostiene la peticionaria es contraria a nuestra decisión en el caso de *Valdés* v. *Hastrup,* 64 D.P.R. 595, 601, no estamos de acuerdo. Dicho caso presentaba una situación distinta pues se trataba en él de mensualidades ya vencidas y no pagadas y resolvimos que si bien una pensión alimenticia concedida en casos de divorcio siempre está sujeta a modificaciones por la corte, ". . .la regla de la mayoría en los Estados Unidos continentales (es que) este poder de modificación sólo se extiende a alimentos futuros. . .'' En el caso de autos el demandado no solicitó que se modificara la cuantía de mensualidades ya vencidas y no pagadas. Su petición se refiere a las mensualidades futuras desde la fecha en que radicó su moción. Era desde esa fecha en adelante, y no en relación con mensualidades vencidas, que alegó que no podía continuar pagando la pensión fijada. Al igual que la cuantía de los alimentos *pendente lite*

se fija para tener efecto desde la fecha en que se solicita durante el transcurso de la acción de divorcio y no desde la fecha en que la corte resuelva la moción, puede hacerse una modificación de dicha cuantía, en relación con mensualidades no vencidas y acumuladas, efectiva desde la fecha en que se solicitó dicha modificación si la prueba lo justifica. Así se resolvió en el caso de *Snow* v. *Snow,* 177 So. 793 (La. 1937) citado en el de *Valdés* v. *Hastrup,* supra, en el que se dijo a la pág. 801: "Refiriéndonos ahora a la sentencia que redujo los alimentos futuros, de $40 a $20 al mes, nuestra opinión es que si se ha de hacer una rebaja debe hacerse a tener efecto desde enero 27, 1937, esto es, *desde el momento en que el demandado solicitó la rebaja* . . . siempre que las condiciones prevalecientes en dicho momento fueran las mismas que cuando se celebró la vista en este procedimiento." (Bastardillas nuestras.)[3] No se cometió el primer error y, como consecuencia, tampoco el segundo.

*Debe anularse la resolución recurrida y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

---

[3] No significa esto, y como cuestión de hecho no sucedió en este caso, que el marido no esté obligado a continuar pasando o depositando la pensión originalmente fijada hasta tanto se resuelva su moción solicitando una rebaja de la misma.