JOSÉ MARÍA GIRÁU SOTO, demandante y apelante, *v.* AMÉRICA GONZÁLEZ, demandada y apelada.

Núm. 10512.—*Sometido:* Enero 2, 1952. *Resuelto:* Abril 29, 1952.

---

*E. Pérez Casalduc,* abogado del apelante; *Antonio Reyes Delgado,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del tribunal.

En esta acción civil el demandante solicitó se condenara a la demandada, bien a poner al demandante en posesión material de cierta finca y pagarle ciertos cánones de arrendamiento adeudados o, en la alternativa, si ella deseaba recobrar el dominio de dicha finca, pagar al demandante $4,000 y el importe de los cánones adeudados. Al declarar parcialmente con lugar la demanda, en la segunda alternativa de su súplica, el tribunal a quo llegó a las siguientes conclusiones de hecho:

"1. En 4 de febrero de 1946 don Regino Rivera y su esposa otorgaron a favor del demandante José María Giráu, mediante escritura núm. 30, ante el notario J. Córdova Rivera, un llamado contrato de compraventa con pacto de retracto en relación con la siguiente propiedad: (Se describe.)

"2. Don Regino Rivera quedó en posesión de la finca y pagó al demandante la suma de CUARENTA DÓLARES ($40) mensuales en calidad de supuesto canon de arrendamiento durante cinco meses y después TREINTA DÓLARES ($30).

"3. En 18 de mayo de 1948 y ante el notario J. Córdova Rivera, se otorgó la escritura número 117 mediante la cual don José María Giráu Soto y su esposa retrovendían la descrita propiedad a don Regino Rivera.

"4. En esa misma fecha y mediante escritura núm. 118 otorgada ante el mismo notario, don Regino Rivera y su esposa vendieron la descrita finca a la demandada doña América González.

"5. En esa misma fecha y mediante escritura núm. 119 otorgada ante el mismo notario, América González le vendió a don José María Giráu la descrita finca por el precio de CUATRO MIL DÓLARES ($4,000), habiéndose convenido un pacto de retroventa por un término de seis meses; obligándose además la demandada América González a pagar un canon de arrendamiento de TREINTA DÓLARES ($30) mensuales, quedando la vendedora en posesión de dicha finca. (Véase el hecho 2do. de la escritura núm. 119, *exhibit* 1ro. del demandante.)

"6. En noviembre 18 de 1948 se cumplió el plazo durante el cual la demandada debió haber ejercido el derecho de retracto pero no lo hizo. No obstante, continuó en posesión de la finca y continuó pagando los cánones mensuales de $30 hasta el mes de diciembre de 1949. Estos pagos eran hechos por el hermano de la demandada, don Pablo González, quien hizo pagos hasta la suma de SEISCIENTOS DÓLARES ($600).

"7. El contrato de compraventa entre Regino Rivera y América González (véase exhibit 4to. del demandante) se llevó a cabo en la siguiente forma:

"Pablo González le adeudaba a su hermana América $3,000. Era dueño de un negocio llamado 'El Porvenir'. Hizo una transacción con Regino Rivera en relación con la propiedad objeto de este litigio, a virtud de la cual le daba su negocio de restaurant, valorado en $5,000. Al otorgarse los documentos, la transacción se hizo a favor de América González en la forma que aparece del exhibit 4to. del demandante, para en esa forma garantizar la deuda que con ella tenía contraída su hermano Pablo.

"8. El término a virtud del cual Regino Rivera podía hacer uso del derecho de retracto venció el 4 de febrero de 1948. No obstante, se otorgó la escritura número 117 (Exhibit 3ro. del demandante) en 18 de mayo de 1948, a virtud de la cual el deman-

dante le vendía la citada finca por la suma de CUATRO MIL DÓLA-RES ($4,000) o sea (la misma suma por la cual él había adquirido la citada finca).

"9. La propiedad objeto de este litigio tiene un valor de DIEZ MIL DÓLARES ($10,000)."

En sus conclusiones de derecho, después de citar el artículo 1410 del Código Civil, ed. de 1930, (¹) el tribunal hizo constar, entre otras, las siguientes:

"En el presente caso, ya hemos expuesto en las conclusiones de hecho, que Regino Rivera quedó en posesión de la finca; pagó durante cinco meses un canon de $40 mensuales y de ahí en adelante hasta que se otorgó el contrato de retroventa $30 mensuales. El demandante José María Giráu nunca ha estado en posesión material de dicha finca. Dichos cánones de arrendamiento constituyen una forma usada por el demandante para cobrarle a Regino Rivera intereses usurarios. El precio que se hizo figurar como precio de enajenación es una cantidad enteramente inadecuada. La transacción realizada entre el demandante y Regino Rivera nunca fué un contrato de venta con pacto de retroventa, siempre fué un préstamo con garantía de hipoteca y se utilizó la venta con pacto de retroventa como un medio para facilitarle al demandante el cobro de intereses en exceso del interés legal, usando para los intereses el nombre de canon de arrendamiento.

"2) El contrato realizado entre el demandante y América González la demandada, está redactado más o menos en los mismos términos, excepto que en la escritura o documento a virtud de la cual don Regino Rivera y su esposa les vendieron a don José María Giráu no se estipularon cánones de arrendamiento; y en

---

(¹) Este artículo dispone lo siguiente:

"Artículo 1410.—Toda venta de propiedad inmueble con pacto de retroventa se presumirá que constituye un contrato de préstamo por el montante del precio, con garantía hipotecaria de la finca vendida, en cualquiera de los casos siguientes:

"*Primero:* Cuando el comprador no hubiere entrado en posesión material de la cosa vendida.

"*Segundo:* Cuando el vendedor pague interés al comprador por el precio de la venta, aunque se denomine canon de arrendamiento o se le dé otro nombre cualquiera.

"*Tercero:* Cuando se hiciere figurar en el contrato, como precio de enajenación una cantidad enteramente inadecuada."

la escritura otorgada por doña América González a favor de don José María Giráu sí se estipularon los llamados cánones de arrendamiento.

"En esta ocasión tampoco José María Giráu entró en posesión material de la finca; América González pagó intereses con la denominación de cánones de arrendamiento, y en el caso de América González también se hizo figurar en el contrato como precio de enajenación una cantidad enteramente inadecuada. El contrato otorgado por doña América González a favor de don Regino Rivera (sic, pues debe decir José María Giráu) fué también un contrato de préstamo con garantía hipotecaria y los intereses pagados por doña América González también son usurarios.

"3) La Ley de Usura, aprobada en 1ro. de marzo de 1902, enmendada por la Ley núm. 5 de 17 de agosto de 1933 en su sección 1ra. y en la parte pertinente dispone lo siguiente:

" 'Disponiéndose, sin embargo, que no podrá fijarse un tipo de interés, por convenio especial, que sea mayor de nueve (9) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, cuando el capital objeto del préstamo o del convenio no exceda de $3,000, y de ocho (8) dólares anuales por cada cien (100) dólares, cuando pase dicha cantidad . . .'

"Si hemos concluído que América González pagaba $30 mensuales, el interés pagado por ésta era de un 9 por ciento o sea, como la cantidad adeudada era de $4,000, intereses en exceso de los autorizados por la ley. El demandante sólo podía cobrar el 8 por ciento, el 9 por ciento de interés cobrado por él a virtud de las disposiciones de la ley constituyen intereses usurarios.

"4) La sección 4ta. de dicha ley posteriormente enmendada por la Ley núm. 47 de 13 de abril de 1916, dispone lo siguiente:

" 'Excepto como queda autorizado por la sección 3 de esta ley, ninguna persona podrá exigir o recibir, directa o indirectamente, dinero o mercancías, a un tipo de interés mayor por el préstamo o la prórroga del préstamo de algún dinero, que el tipo fijado por la presente. Nada de lo contenido en esta ley se interpretará en el sentido de prohibir la venta de efectos al contado a un precio más bajo que al crédito.

" 'Ningún contrato en el cual se reserve, acepte o asegure, o se convenga en reservar, aceptar o asegurar, un tipo de interés mayor que el que se permite por esta ley, podrá hacerse efectivo en una corte de Puerto Rico, sino por el importe del capital adeudado, y la Corte deberá, además, disponer en la sentencia condenando al deudor al pago del capital que el acreedor recobre

solamente de su deudor el 75 por ciento de dicho capital y que el 25 por ciento restante sea adjudicado y recobrado por El Pueblo de Puerto Rico, quien podrá obtener mandamiento de ejecución, del mismo modo que el demandante, y sin preferencia sobre el montante adjudicado a éste, para hacer efectivo el 25 por ciento así adjudicado.'

"El pacto o estipulación hecho por América González con el demandante José María Giráu a los efectos de pagar $30 mensuales bajo el nombre de cánones de arrendamiento y en calidad de intereses, es nulo por disposición de ley, estando impedido el demandante de recobrar ninguna cantidad de dinero por tal concepto. El artículo 1069 del Código Civil también dispone que las condiciones prohibidas por la ley anularán la obligación que de ellas dependa."

En su consecuencia dictó sentencia con los siguientes pronunciamientos:

"1. Que la transacción realizada entre el demandante y la demandada constituye un préstamo con garantía de hipoteca.

"2. Que los cánones de arrendamiento pagados por América González al demandante constituyen intereses en exceso del tipo legal y que el demandante no puede cobrar dichos intereses.

"3. Que el importe de la deuda es de Cuatro Mil Dólares ($4,000). Que la demandada América González viene obligada a pagar al demandante la suma de Tres Mil Dólares ($3,000), a cuya suma deberá abonarse e imputarse como abono al capital la suma de Seiscientos Dólares ($600) pagados por ésta al demandante, debiendo pagar la diferencia, o sea, Dos Mil Cuatrocientos Dólares ($2,400).

"4. Que los restantes Mil Dólares ($1,000) deberá pagarlos al Pueblo de Puerto Rico como penalidad impuesta por ley al demandante por haber incurrido en una violación a la Ley de Usura.

"5. Que el demandante ha sido temerario y ha pretendido utilizar al Tribunal para cobrar lo que la ley no le permite, por lo que la Corte entiende que debe condenarse al pago de las costas y honorarios de abogado y le condena a pagar la suma de Trescientos Dólares ($300) por concepto de honorarios de abogado más las costas y gastos en que haya incurrido la demandada en este litigio."

No conforme el demandante apeló y en este recurso sostiene que el tribunal sentenciador erró (1) al calificar el con-

trato celebrado entre las partes·como de préstamo de dinero con intereses usurarios y aplicar las leyes vigentes dirigidas a hacer inefectivos contratos de esa naturaleza, y (2) al condenar al demandante a pagar a la demandada $300 para honorarios de abogado.

■■■■ Al argumentar el primer error el apelante admite que el contrato celebrado por él y Regino Rivera el 4 de febrero de 1946 violaba las disposiciones de la Ley de Usura, citada por el tribunal inferior, y que Rivera hubiera podido levantar con éxito la defensa de usura. Empero, sostiene que la apelada no puede alegar a su favor la nulidad de dicho contrato ya que la defensa de usura sólo puede ser planteada por el deudor original, y no por una tercera persona como lo es la apelada, quien al adquirir el inmueble en la forma en que lo hizo equivalió a una novación del contrato celebrado entre el apelante y Regino Rivera.

Aceptando, sin resolverlo, que el contrato entre el apelante y la apelada constituyera una novación del contrato original celebrado entre el apelante y Rivera, ese hecho no impedía que la apelada planteara, como planteó, la defensa de usura, no obstante la disposición del artículo 1162 del Código Civil, ed. de 1930.(²)  Y esto es así porque, según indicamos en *Caraballo* v. *Registrador*, 48 D.P.R. 923; *cf. Rosario* v. *Ruiz*, 62 D.P.R. 326 y ahora resolvemos, ningún contrato que viola la Ley de Usura puede hacerse efectivo en una corte de Puerto Rico, por mandato de su sección 4, según enmendada en 1916, supra, disponiendo también la sección 4 que los derechos en ella definidos "no son renunciables".  Por tanto, no empece la disposición del artículo 1162 del Código Civil, supra, si la causa de nulidad en el contrato objeto de novación se debe a que el mismo infringe la Ley de Usura, el deudor no está impedido de invocar la nulidad de dicho contrato y de probarse,

---

(²) Este artículo dispone:
"Artículo 1162.—La novación es nula si lo fuere también la obligación primitiva, salvo que la causa de nulidad sólo pueda ser invocada por el deudor, o que la ratificación convalide los actos nulos en su origen."

como se probó en el presente caso, que el apelante, tanto en el contrato original celebrado con Rivera (y esto lo admite el apelante en su alegato) como en el que celebró con la apelada, estipuló y cobró intereses en exceso de los permitidos por ley, no erró el tribunal sentenciador al dar cumplimiento a las disposiciones de la Ley de Usura en la forma en que lo hizo en su sentencia.

██ ██ En cuanto al segundo error señalado, repetidas veces hemos resuelto que determinada la temeridad de la parte perdidosa procede la concesión de honorarios de abogado. Y no creemos que al fijar su cuantía, el tribunal abusara de su discreción en el presente caso. *Collazo* v. *Conesa*, 70 D.P.R. 155; *Cerra* v. *Motta*, 70 D.P.R. 861; *Santiago* v. *González*, 71 D.P.R. 942; *Font* v. *Pastrana*, ante pág. 247.

*Debe confirmarse la sentencia.*