EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN VEGA SANTOS, acusado y apelante.

*Número:* CR-62-327     *Resuelto:* 3 de mayo de 1963

*Eduardo M. Díaz Porto,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: Juan Vega Santos fue acusado y convicto en la Sala de Bayamón del Tribunal Superior, en juicio celebrado ante jurado, por un delito de homicidio involuntario por razón de haber dado muerte a Nemesio Sánchez Montañez con un camión que manejaba el acusado en o allá para el día 17 de junio de 1960. El jurado rindió veredicto de culpabilidad y fue sentenciado a sufrir un año de cárcel y se le suspendió su licencia de conductor por el término de dos

años a partir de la fecha en que extinga la sentencia dictada. Se alegó en la acusación que mientras dicho acusado manejaba determinado camión en la carretera núm. 2, Km. 38, Hm. 5 de Vega Baja, P.R., por su falta de prudencia y circunspección, sin tocar cláxon, sin tomar las debidas precauciones para garantizar la seguridad de las vidas y propiedades y al conducir el vehículo a una velocidad exagerada mayor de la que le permitía ejercer el debido dominio del vehículo y sin reducir la velocidad, arrolló a Sánchez Martínez y luego se dio a la fuga, ocasionándole varias lesiones y heridas a consecuencia de las cuales murió. La prueba en apoyo de la acusación consistió del testimonio de: 1) el Dr. Antonio Carro quien declaró sobre las causas de la muerte del interfecto y sobre la identificación del cadáver y, por último, en contrainterrogatorio, que para ocasionar las lesiones que mostraba el cadáver, el vehículo tenía que ir a velocidad moderada "porque lo que fracturó fue la pierna y cayó." (T.E. págs. 3, 4, 5 y 8); 2) Antonio Padilla quien declaró que viajaba en el camión con el acusado en la noche del accidente, que vio a Sánchez Montañez caminando dando zigzags por el lado de la carretera por donde transitaba el camión conducido por el acusado; que éste se dirigía en la misma dirección que el camión y como a seis pies de la orilla de la carretera; que el camión iba ligero; que el testigo le llamó la atención al acusado de que "ahí alante de ti va uno" y entonces arrolló a Sánchez Montañez; que el acusado no llegó a parar el camión después del accidente sino frente a un semáforo de tráfico como a 20 pies del lugar del accidente porque el testigo le aconsejó que siguiera "que te van a pelar", de donde siguieron a casa del testigo; que el acusado fue aconsejado por el testigo que no fuese a entregarse esa noche, pues estaba muy nervioso y podía tener un accidente; que en dirección contraria a la del camión transitaba otro vehículo que "enfocó" al acusado; que vino a ver a Sánchez Montañez como a seis pies, "pegado al camión" (T.E. págs. 11, 12, 13, 14, 16,

17 y 19); 3) Angel Manuel García declaró que la noche del accidente estaba en servicio de patrulla de la policía, se le avisó que fuera al sitio donde se encontraba el cuerpo del interfecto el cual encontró como a 600 pies del semáforo en cuestión; que investigó, pero no encontró frenazo alguno marcado en la carretera (T.E. págs. 33 y 35); 4) Laureno Riestra Fernández explicó su participación en la investigación del suceso al día siguiente del mismo con motivo de la cual como a las cinco de la tarde fue a casa del acusado "para invitarlo a ir al Cuartel de la Policía porque estaba relacionado con el accidente" y éste lo acompañó; que el acusado le dijo que había tenido el accidente y se había ido (T.E. pags. 37 y 38). La defensa no ofreció prueba alguna. El juez sentenciador procedió entonces a dictar sus instrucciones al jurado en la cual hizo un resumen correcto de la prueba presentada y una exposición de la ley relativa al delito de homicidio involuntario, sobre la forma y manera del jurado aquilatar la prueba y luego informó:

"En este caso el Fiscal ha traído prueba de que el acusado, una vez ocurridos los hechos, se fué del sitio de los hechos. Debo instruirles que la huída de una persona inmediatamente después de la comisión de un crimen o de un acto delictivo es una circunstancia que puede ser considerada por el jurado como demostrativa de una consciencia [sic] no exenta de culpabilidad; aunque la corte os instruye que ella por sí sola no es suficiente para establecer la culpabilidad del acusado. La huída o fuga son circunstancias para ser apreciadas y ponderadas como tendientes a probar un sentimiento de culpabilidad, siendo la incumbencia del jurado el determinar su significación o insignificancia, así como el peso que merezcan considerando todas las circunstancias que concurren en el caso." (T.E. págs. 13 y 14.)

Por último instruyó al jurado sobre las disposiciones de la Ley de Automóviles y Tránsito de 5 de abril de 1946, con respecto a la velocidad a que deben conducirse los vehículos y la obligación del que maneja un vehículo de detenerlo al ocurrir un accidente y dar su nombre, dirección y número de

su licencia a la persona perjudicada o a la policía y de comunicar los detalles del accidente a la estación de policía más cercana y con respecto a su obligación de llevar cualquier persona lesionada al hospital más cercano o a su residencia. A esos efectos el juez juzgador leyó las disposiciones de las Secs. 15 y 17(b) de la referida ley (9 L.P.R.A. secs. 185 y 187).(¹)

En apelación señala el acusado-apelante que el tribunal de instancia incurrió en los siguientes errores:

1.—Al instruir al jurado con respecto a las disposiciones de la Ley de Automóviles sobre la huida o fuga o no informar la ocurrencia de un accidente y al negarse a instruirlo que podía traer un veredicto de culpabilidad por violación de la referida ley y absolutorio en cuanto a homicidio involuntario.

Arguye el apelante que si se le hubiese imputado como elemento de negligencia el haber guiado en estado de embriaguez o el haber corrido a mayor velocidad podía el tribunal. instruir al jurado sobre las disposiciones pertinentes de la Ley de Automóviles, pues en tales circunstancias se trata de actos declarados delictivos por la referida ley; que no ocurre así cuando el acusado de un accidente se da a la fuga, pues este último hecho en sí no constituye negligencia; que en un caso como éste el jurado sólo puede recibir instrucciones sobre el delito por el que se está juzgando al acusado ya que la infracción a la Ley de Automóviles consistente en dejar de informar un accidente a la policía no está comprendida dentro del delito de homicidio involuntario.

Convenimos con el Procurador General que la jurisprudencia citada por el acusado en apoyo de su tesis no es aplicable, pues la misma se refiere a casos en que el tribunal de instancia a) condenó al acusado del delito de que se le acusaba aunque la prueba era bastante para sostener una acusación

---

(¹) Las disposiciones pertinentes de la Ley de Vehículos y Tránsito de 20 de julio de 1960 son las Secs. 5-101, 4-101 y 4-103 (9 L.P.R.A. secs. 841, 781 y 783).

por otro delito, *Pueblo* v. *Alvarez*, 56 D.P.R. 18 (1940); b) transmitió instrucciones sobre un delito menor sin estar justificadas por la prueba resolviéndose que esto no es perjudicial al acusado ni produce la nulidad del veredicto cuando éste ha sido rendido por el delito menor, *Pueblo* v. *Blanco*, 77 D.P.R. 767 (1954); y *Pueblo* v. *Muñiz*, 77 D.P.R. 851 (1955); c) no transmitió instrucciones sobre el delito de aborto por ser improcedentes en un caso en que la acusación es de asesinato en segundo grado, *Pueblo* v. *Cirino*, 69 D.P.R. 523 (1949).

Las instrucciones fueron definitivas en el sentido de que prueba de la huida de una persona inmediatamente después de la comisión de un crimen no es por sí sola suficiente para establecer la culpabilidad del acusado. Dijo el tribunal: "La huída o fuga son circunstancias para ser apreciadas y ponderadas como tendientes a probar un sentimiento de culpabilidad, siendo la incumbencia del jurado el determinar su significación o insignificación, así como el peso que merezcan considerando todas las circunstancias que concurren en el caso." (Instrucciones, págs. 13–14.) Las instrucciones no fueron inconsistentes o irreconciliables entre sí y por lo tanto, el caso de *Pueblo* v. *Alsina*, 79 D.P.R. 46 (1956), citado por el acusado-apelante es inaplicable. El lenguaje del tribunal apelado fue mesurado y revela un rigor selectivo que garantizó la protección debida de los derechos del acusado. *Pueblo* v. *López*, 77 D.P.R. 607 (1954), cita precisa a la página 616.

2.—Al no instruir el tribunal al jurado sobre las tablas o reglas de velocidad de Blashfield.

Alega el acusado que habiendo el testigo Padilla declarado que el camión se detuvo a 20 pies del lugar del accidente, el jurado tenía prueba suficiente para recibir instrucciones sobre las tablas o reglas de velocidad de Blashfield que hubiera demostrado que el camión iba a una velocidad menor de 30 kilómetros por hora que no es equivalente a ir ligero

como testificó Padilla. No se cometió este error pues, en primer lugar, para calcular la velocidad del camión se necesitaba prueba sobre la distancia que recorrió desde el momento en que el acusado aplicó los frenos hasta que detuvo el vehículo por completo y tal prueba no se presentó y, en segundo lugar, la declaración de Padilla fue contradicha por la del testigo Angel Manuel García, el agente público que investigó el accidente y quien declaró que la distancia entre el sitio en que halló el cadáver y el semáforo era de 500 a 600 pies. Se consideró el uso de tales tablas en la opinión emitida por el Juez De Jesús en la que concurrió el Juez Snyder, en el caso de *Rosado* v. *Rosario*, 69 D.P.R. 169 (1948), por haberse establecido por la prueba que el vehículo estaba a 30 pies cuando el lesionado comenzó a cruzar la avenida en que fue arrollado. (2) En el caso ante nos no se comprobó que existiese una situación similar.

3.—Apunta el acusado-apelante como tercer y último error la insuficiencia de la prueba presentada para obtener un veredicto de culpabilidad.

Este error carece de fundamento. Se presentó prueba de que el acusado iba a una velocidad que no le permitió dominar el vehículo al frenar antes del accidente y, además, de que no ejerció la debida prudencia y circunspección en la conducción del vehículo al extremo de no ver, y por lo tanto, arrollar a Sánchez Montañez en una carretera recta y sin obstáculos y en circunstancias en que la visibilidad era suficiente para haber evitado el accidente. En esta última instancia era el jurado a quien correspondía dirimir cualquier conflicto en la prueba que pudiera existir. Su determinación declarando culpable al acusado está sostenida y encuentra

---

(2) En la otra opinión en este caso emitida por el Juez Todd, Jr., en la que concurrió el Juez Presidente Travieso se puntualizó que se les daba valor a dichas tablas "sin aceptar que debamos adoptarlas como un medio a ser aplicado en casos de esta naturaleza." Véase, además, *Morales Muñoz* v. *Castro*, 85 D.P.R. 288 (1962).

justificación en la prueba.([3]) *Pueblo* v. *López*, 77 D.P.R. 607 (1954).

*La sentencia apelada deberá ser confirmada.*

---

([3]) Las circunstancias de este caso son distintas a las de los casos de *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456 (1962) y *Pueblo* v. *Pérez*, 79 D.P.R. 487 (1956), en que absolvimos a los acusados al concluir que los perjudicados en tales casos se adentraron inesperadamente en la carretera de manera que los accidentes que motivaron su muerte fueron inevitables.