ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| SANTOS RODRÍGUEZ CRESPO Y SU ESPOSA FRANCES MIRIAM CINTRÓN RODRÍGUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA<br><br>APELADOS<br><br>V.<br><br>FULANO DE TAL, OSVALDO GALIO NIDO Y SU ESPOSA NAYDA IVETTE TIRADO HUERTAS Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA<br><br>APELANTES | KLAN202400028 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Guayama<br><br>Caso Núm. PA2019PV00096<br><br>Sala: 302<br><br>Sobre:<br><br>COBRO DE DINERO Y EJECUCIÓN DE HIPOTECA POR LA VÍA ORDINARIA |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de marzo de 2024.

Comparecen Osvaldo Galio Nido (señor Galio Nido), su esposa Nayda Ivette Tirado Huertas (señora Tirado Huertas) y la Sociedad Legal de Gananciales compuesta por ambos, (en conjunto, los apelantes) y solicitan la revocación de la Sentencia emitida el 7 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala de Patillas (TPI o foro primario), notificada el 9 de noviembre de 2023. Mediante la referida sentencia, el foro primario declaró ha lugar las Demandas en cobro de dinero y ejecución de hipoteca presentadas en contra de los apelantes por Santos Rodríguez Crespo (señor Rodríguez Crespo), Frances Miriam Cintrón Rodríguez (señora Cintrón Rodríguez) y la Sociedad Legal de Gananciales compuesta por ambos, (en conjunto, los apelados), en los casos consolidados, con designación alfanumérica PA2019PV00094, PA2019PV00095 y

Número Identificador
SEN2024 _____

PA2019PV00096. Concluyó el TPI a base de la prueba oral desfilada, que el señor Rodríguez Crespo no es prestamista, por lo que ninguna ley especial le requería tener licencia para otorgar los préstamos garantizados con los pagarés hipotecarios objeto de las demandas de cobro de dinero y ejecución de hipoteca presentadas en contra de los apelantes.

Por los fundamentos que expondremos a continuación, confirmamos la Sentencia apelada.

I

El tracto procesal del caso que nos ocupa inició el 30 de abril de 2019, fecha en que los apelados presentaron ante el foro primario demandas de sustitución de pagarés extraviados en contra de los apelantes en los casos consolidados, cuya designación alfanumérica es PA2019PV00094, PA2019PV00095 y PA2019PV00096. El TPI permitió enmendar las demandas para incluir como segunda causa de acción el cobro de dinero y ejecución de hipoteca resultantes del incumplimiento de pago de los pagarés garantizados. El 14 de mayo de 2021, el foro primario emitió *Sentencia Parcial* en la que declaró Ha Lugar la cancelación de los pagarés originales y su sustitución.

En las demandas de cobro de dinero y ejecución de hipoteca en los casos consolidados, los apelados reclamaron el pago de los principales y sus intereses anuales a partir del 4 de febrero de 2016, tras modificarse los mismos al 6%. Los apelados alegaron además, que los apelantes suscribieron, por valor de recibido, los siguientes pagarés y las partes demandantes son los tenedores por valor pagado y de buena fe, poseedores de los pagarés para su cobro, y dueños de los préstamos objeto de la Demanda, los cuales desglosan a continuación;

> A. Escritura de Hipoteca Número 17, del 25 de junio de 2001 por la cantidad de $160,000.00, al 10% de intereses anual, Vencimiento el 25 de julio de 2008. Pagos mensuales de intereses, sin abono al principal, de $1,333.33. Modificaciones:
> • A partir de 21 de noviembre de 2014, se modifica el interés anual del 10% al 8%, pagos mensuales de intereses, sin abono al principal de 1,066.66. • A partir de 4 de febrero de 2016, se modifica el interés anual del 8% al 6%, pagos mensuales de intereses, sin abono al principal de $800.00.

B. Hipoteca del 23 de noviembre de 2004, Escritura Número 50, por la cantidad de $240,000.00, al 10% de intereses anual, Vencimiento 25 de julio de 2008. Pagos mensuales de intereses, sin abono al principal, de $2,000.00. Modificaciones:

• A partir de 21 de noviembre de 2014, se modifica el interés anual del 10% al 8%, pagos mensuales de intereses, sin abono al principal de $1,600.00.
• A partir de 4 de febrero de 2016, se modifica el interés anual del 8% al 6%, pagos mensuales de intereses, sin abono al principal de $1,200.00.

C Hipoteca por la cantidad de $91,700.00, al 8% de intereses anual. Pagos mensuales de intereses, sin abono al principal, de $611.33, comenzando el 25 de diciembre de 2014.

• A partir de 4 de febrero de 2016, se modifica el interés anual del 8% al 6%, pagos mensuales de intereses, sin abono al principal de $458.50.

La descripción registral de la propiedad que garantiza la obligación de pago de los apelantes es la siguiente:

---URBANA: Parcela de terreno de exactamente cero punto cincuenta centésimas con setenta y seis milésimas de cuerda, equivalentes a mil novecientos noventa y cuatro punto ochenta y seis metros cuadrados (1994.86 m.c.), en colindancias por el NORTE con la Quebrada Mamey Chiquito que la divide con terrenos de Petra González, midiendo por el Este, ciento veintitrés (123) varas; por el SUR, la finca que se segrega, propiedad de Félix González Pérez, por donde mide veinticuatro (24) varas; por el ESTE, con carretera de Patillas a San Lorenzo, por donde mide dieciséis (16) varas; y por el OESTE, con terrenos del pueblo de Puerto Rico, por donde enclava escuela pública, por donde mide once (11) varas.------------------------La propiedad está inscrita a favor de Osvaldo Galio Nido y Naida Ivette Tirado Huertas.----------------------------------------------------------------------------------------------------Número de Catastro: 398-078-009-06-004.----------------------------------------------          ---Consta inscrita al folio 21 del tomo 71 de Patillas, Finca 3702, Registro de la Propiedad de Guayama.--------------------------------------------------------------------------

Tras varios incidentes procesales los apelados solicitaron al foro primario que emitiera Sentencia Sumaria y declarara ha lugar las tres demandas de cobro de dinero y ejecución de hipoteca. En síntesis, estos alegaron que de la prueba presentada se desprende la existencia de tres préstamos hipotecarios y que la deuda es líquida, vencida y exigible.

Por su parte, el 31 de enero de 2022, los apelantes presentaron ante el TPI una réplica a la solicitud de sentencia sumaria de los apelados y solicitaron al foro primario que concluyera sumariamente que el señor Rodríguez Crespo se dedicaba al negocio de prestar dinero sin tener

licencia de prestamista y que cobraba intereses usureros. Sobre esos extremos argumentaron los apelantes que debido a que los préstamos se originaron con intereses anuales usureros, sus pagos por intereses debían ser considerados pagos al principal, por lo que existía una diferencia a su favor de $164,822.49. Señalaron además, los apelantes que procedía la aplicación de una penalidad por préstamo usurero, por lo que solo les correspondía pagar al señor Rodríguez Crespo el 75% del principal y el restante 25% al Estado Libre Asociado (ELA).

Mediante *Resolución* emitida el 17 de marzo de 2022, el foro primario decretó como usureros los Préstamos Hipotecarios, por los montos de **$160,000.00 y $240,000.00** y ordenó la celebración de la vista evidenciaría para determinar la suma total de los pagos de intereses ilegales realizados por la parte demandada a la parte demandante, los que se descontaran al principal adeudado. En cuanto a estos dos préstamos resolvió, además, aplicar la penalidad establecida en el Artículo 1652 del Código Civil, pagando el 75% del principal al demandante y el 25% del principal al ELA, por estos préstamos hipotecarios. Sin embargo, el TPI declaró No Ha Lugar a la solicitud para que se decretara usurero el préstamo por **$91,700.00,** así como la solicitud para que se decretara que los apelantes adeudaban a los apelados la cantidad de **$29,579.99** por concepto de mensualidades anteriores no pagadas o satisfechas

Finalmente, mediante la aludida *Resolución* de 17 de marzo de 2022, **el TPI declaró No Ha Lugar la Solicitud para que se declarara la nulidad de los pagarés hipotecarios fundamentada en que el señor Rodríguez Crespo debía ser catalogado como prestamista sin licencia al momento de realizar los préstamos. Sobre estos extremos, el foro primario determinó que existía controversia referente a si el señor Rodríguez Crespo debía o no ser catalogado como prestamista. Para dilucidar esa controversia el TPI señaló vista para el 30 de agosto de 2023.**

Posteriormente, el 21 de abril de 2023, el TPI celebró vista en la que delimitó la controversia del caso ante su consideración al aspecto exclusivo de si se catalogaba o no al señor Rodríguez Crespo como prestamista al momento de realizar los préstamos y las consecuencias de tal determinación sobre la validez o invalidez de dichos préstamos. Destacó además, el foro primario que una vez adjudicado dicho asunto evaluaría el juicio plenario y que la *Resolución* emitida el 17 de marzo de 2022 no había sido revisada por las partes.[1]

El 30 de agosto de 2023 el TPI celebró el juicio en sus méritos y las partes estipularon la siguiente prueba documental:

Exhibit 1A al Exhibit 1F Recibos año 2001 (seis recibos) 2 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en

Exhibit 2A al Exhibit 2K Recibos año 2002 (once recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de2023)

Exhibit 3A al Exhibit 3L Recibos año 2003 (doce recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 4A al Exhibit 4L Recibos año 2004 (doce recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 5A al Exhibit 5O Recibos año 2005 (quince recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 6A al Exhibit 6T Recibos año 2006 (veinte recibos) 4 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 7A al Exhibit 7U Recibos año 2007 (veintiún recibos) 5 folio (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 8A al Exhibit 8S Recibos año 2008 (diecinueve recibos) 4 folios (presentados en Moción en Cumplimiento de Orden

---

[1] Véase *Minuta* de 21 de abril de 2023, Entrada Núm. 88 de SUMAC.

Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 9A al Exhibit 9O Recibos año 2009 (quince recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 10A al Exhibit 10U Recibos año 2010 (veintiún recibos) 5 folios (presentados en Moción en Cumplimientos de Orden Anejando Digitalmente Totalidad Des Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 11A al Exhibit 11Y Recibos año 2011 (veinticinco recibos) 5 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 12A al Exhibit 12L Recibos año 2012 (doce recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 13A al Exhibit 13K Recibos año 2013 (once recibos) 3 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 14A Recibos año 2014 (un recibo) 1 folio (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 15A al Exhibit 15F Recibos año 2015 (seis recibos) 2 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 16A al Exhibit 16Z Recibos año 2016 (veintiséis recibos) 7 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Exhibit 17A al Exhibit 17S Recibos año 2017 (diecinueve recibos) 5 folios (presentados en Moción en Cumplimiento de Orden Anejando Digitalmente Totalidad De Recibos Estipulados, Entrada 75 en SUMAC en el caso PA2019CV00095 del 30 de marzo de 2023)

Mediante Sentencia emitida 7 de noviembre de 2023, notificada el 9 de noviembre de ese año el foro primario declaró ha lugar las Demandas en cobro de dinero y ejecución de hipoteca presentadas en contra de los

apelantes por el señor Rodríguez Crespo. Concluyó el TPI, que el señor Rodríguez Crespo no es prestamista; que aunque ha prestado dinero ha cambio de intereses, este no se ha dedicado al negocio de prestar dinero por lo que ninguna ley especial le requería tener licencia de prestamista. En dicha Sentencia el foro primario hizo las siguientes determinaciones de hecho:

DETERMINACIONES DE HECHOS

**1.**La parte demandante prestó el total de **$491,700.00** de principal en los tres préstamos. Los prestamos son:

I. El **25 de junio de 2001,** mediante Hipoteca por la cantidad de **$160,000.00**, al 10% de intereses anual. Vencía el 25 de julio de 2008. Pagos mensuales de $1,333.33.

II. El **23 de noviembre de 2004** mediante Hipoteca por la cantidad de **$240,000.00**, al 10% de intereses anual. Vencía el 25 de julio de 2008. Pagos mensuales de $2,000.00.

III. Contrato de modificación de Hipoteca, en cuanto a variar el porciento de interés anual
A partir de 21 de noviembre de 2014, se modifica el interés anual del 10% al 8%.
Se modifica las dos hipotecas:
1. Por $160,000.00
2. Por $240,000.00
3. Pagaran intereses mensuales por la cantidad de $2,666.66, comenzando el 25 de diciembre del año 2014.

IV. Hipoteca por la cantidad de **$91,700.00**, al 8% de intereses anual. Pagos mensuales de $611.33, comenzando el 25 de diciembre de 2014.
A. Total de intereses a pagar al 8% por las tres hipotecas a partir de 25 de diciembre del año 2017, $3,277.99
B. $2,666.66 + $611.33 = Total $3,277.99

V. Contrato de modificación de Hipoteca en cuanto a variar el porciento de interés anual.
A. A partir de 4 de febrero de 2016, se modifica el interés anual del 8% al 6%.
B. Se modifica las tres Hipotecas:
1. Por $160,000.00
2. Por $240,000.00
3. Por $91,700.00
C. Pagaron intereses mensuales de $2,458.50, se desglosan a continuación:
1. Hipoteca $160,000.00 x 6% = $9,600.00 dividido 12 = $800.00
2. Hipoteca $240,000.00 x 6% = $14,400.00 dividido 12 = $1,200.00
3. Hipoteca $91,700.00 x 6% = $5,502.00 dividido 12 = $458.50
**TOTAL $2,458.50**

**2**. Los acreedores, Santos Rodríguez Crespo, su esposa Frances Miriam Cintrón Rodríguez y si sociedad legal de gananciales presentaron tres (3) demandas para cobrar sus acreencias antes descritas, a saber:

**A.** En la demanda PA2019CV00094 reclaman la Hipoteca **$160,000.00 a razón de un 6% de interés** según se modificó mediante Contrato de modificación de Hipoteca en cuanto a variar el porciento de interés anual, a partir de **4 de febrero de 2016**, donde se modifica el interés anual del **8% al 6%.** Originalmente el interés de este préstamo era al **10%.**

B. En la demanda PA2019CV00095 reclaman la Hipoteca **$240,000.00 a razón de un 6%** de interés según se modificó mediante Contrato de modificación de Hipoteca en cuanto a variar el porciento de interés anual**, a partir de 4 de febrero de 2016**, donde se modifica el interés anual del 8% al 6%. Originalmente el interés de este préstamo era al 10%.

C. En la demanda PA2019CV00096 reclaman la Hipoteca **$91,700.00 a razón de un 6%** de interés según se modificó mediante Contrato de modificación de Hipoteca en cuanto a variar el porciento de interés anual, **a partir de 4 de febrero de 2016**, donde se modifica el interés anual del 8% al 6%. Originalmente el interés de este préstamo era al **8%.**

**3.** Don Santos Rodríguez Crespo es comerciante y tuvo negocio de gas fluido el cual rentó y recibe renta de casas de su propiedad de las cuales no recuerda cuántas.

**4**. Este reside en una casa de su hija donde solo paga el mantenimiento del seguro y de control de acceso.

**5. Don Santos Rodríguez Crespo declaró, bajo juramento, que no es prestamista, no se ha dedicado al negocio de prestar dinero** y, que ha prestado dinero a cambio de cobrar intereses los cuales ha reportado en las planillas a través de su contable ante el Departamento de Hacienda de Puerto Rico.

**6**. Con relación a los préstamos que ha hecho Don Santos, de tiempo en tiempo, a preguntas del licenciado Bello Rivera, bajo juramento, el señor Santos Rodríguez declaro que, los mismos se hicieron con el Lcdo. Carlos Rodríguez, fallecido.

**7**. La fecha del primer préstamo a los demandados fue el 25 de junio de 2001 por la cantidad de **$160,000.00** dólares.

**8.** Don Santos Rodríguez Crespo les ha prestado dinero a sus familiares.

**9**. Don Santos Rodríguez Crespo le ha hecho diferentes préstamos a otras personas y corporaciones.

**10**. El señor Santos Rodríguez declara que, todos los préstamos eran con garantía de hipoteca.

**11**. El Sr. Galio Nido acepto que recibió el importe de los tres préstamos y tenía el capital en préstamo de **$491,000.00** dólares en la totalidad de los préstamos.

**12**. El primer préstamo fue de $160,000.00 pactado al diez por ciento (10% de interés). Ese préstamo se modificó al ocho por ciento (8%) de interés a partir del **4 de febrero de 2016**.

**13**. El Sr. Galio Nido aceptó, además, haberle solicitado el préstamo a Don Santos para comprar gasolina para su estación de gasolina y consolidar deudas. Deudas que pagó y se benefició de ese dinero.

**14**. El Sr. Galio Nido aceptó que las cantidades que establecen los recibos estipulados en evidencia concuerdan con la cantidad que se supone que pagara de intereses mensualmente.

Conforme a las anteriores determinaciones de hechos, el foro primario **concluyó que los tres préstamos con garantía hipotecaria otorgados por el señor Rodríguez Crespo a los apelantes son válidos** y que ninguna ley especial le requería a este tener una licencia del CIF para prestar dinero a los apelantes. Razonó el TPI que no significa que los préstamos objeto de la acción de cobro de dinero y ejecución de hipoteca estén exentos de regulación sino que estos están regulados por el Código de Civil.

Así las cosas, el foro primario ordenó a los apelantes a pagar el 75% del principal de los préstamos de $160,000.00 y $240,000.00 así como el 10% de esas cantidades para el pago de costas, gastos y honorarios de abogados según pactados. Ordenó además que el veinticinco por ciento (25%) restante fuera adjudicado y recobrado por el Estado Libre Asociado De igual forma, resolvió el TPI que los apelantes deben pagar el 8% de interés, a partir del 25 de junio de 2001, en el de $160,000.00 y en el de $240,000.00 a partir del 23 de noviembre de 2004. En esos préstamos el foro primario concluyó que a partir del 4 de febrero de 2016 los apelantes deberán pagar el interés anual modificado del 8% al 6%. Finalmente, el TPI dispuso que los apelantes deberán pagar además, el total del balance de cancelación del préstamo de $91,700.00, el 8% de interés anual y a partir de 4 de febrero de 2016, deberán pagar el interés anual modificado del 8% al 6% y el 10% de esa cantidad para el pago de costas, gastos, y honorarios de abogados según pactados. Por último, el foro primario ordenó que los intereses cobrados en exceso de los préstamos de $160,000.00 y $240,000.00 fueran acreditados a los intereses que válidamente podía cobrar el acreedor y de sobrepasar esos intereses dispuso el TPI que estos

se acreditarán al 75% que tiene derecho a cobrar el acreedor principal. El foro primario ordenó igualmente a los apelantes pagar además, los intereses acumulados desde que dejó de pagar los préstamos.

En desacuerdo, los apelantes presentaron el recurso de epígrafe y señalan la comisión de los siguientes errores por parte del foro primario:

PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO CONCLUIR QUE EL DEMANDADO ES UN PRESTAMISTA QUE MANTIENE UNA VOLUMINOSA Y LONGEVA ACTIVIDAD COMERCIAL AL MARGEN DE LA LEY, SIN POSEER LICENCIA PARA TALES NEGOCIOS EXPEDIDA POR EL GOBIERNO DE PUERTO RICO.

SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO DECLARAR LOS TRES PRÉSTAMOS HIPOTECARIOS DE LOS QUE TRATA LA DEMANDA COMO NULOS, AL HABER SIDO GENERADOS SIN LICENCIA EXPEDIDA POR EL GOBIERNO DE PUERTO RICO.

TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DECLARAR NULOS *AB INICIO* LOS PRIMEROS DOS PRÉSTAMOS HIPOTECARIOS EXPEDIDOS POR EL DEMANDANTE AL DEMANDADO POR HABERSE GENERADO DICHOS PRÉSTAMOS A UN INTERÉS ILEGAL (USURERO), INDEPENDIENTEMENTE DE QUE ESOS INTERSESES SE ENMENDARAN POSTERIORMENTE.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL VIOLENTAR CON SU SENTENCIA LA LEY DEL CASO SEGÚN ESTABLECIDA EN LA RESOLUCIÓN PREVIA ADJUDICANDO SENTENCIAS SUMARIAS DICTADA MÁS TEMPRANO EN EL MISMO CASO POR OTRO JUEZ INSTRUCTOR, EL HONORABLE HARRY RODRÍGUEZ GUEVARA.

QUINTO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA IGNORANDO LA EVIDENCIA TESTIFICAL DESFILADA EN JUICIO, DEMOSTRANDO ASI PERJUICIO Y PARCIALIDAD.

SEXTO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA IGNORANDO LA EVIDENCIA DOCUMENTAL ESTIPULADA PARA EL JUICIO.

SÉPTIMO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL HABER DICTADO SENTENCIA EN CONTRA DEL APELANTE LUEGO DE HABERLE SOLICITADO

FORMALMENTE, POR ESCRITO, UN PROYECTO DE SENTENCIA.

En respuesta, el 9 de febrero de 2024, los apelados presentaron *Alegato en Oposición.* En esencia, sostienen que el foro primario determinó que el señor Rodríguez Crespo no es prestamista, a base de su testimonio, al cual el TPI le adjudicó entera credibilidad. Razonan los apelados que dicho hecho probado llevó al foro primario a concluir correctamente que para otorgar los préstamos hipotecarios objeto de las reclamaciones, el señor Rodríguez Crespo no tenía que obtener licencia de prestamista y que los apelantes no probaron que este se dedicara o tuviera como negocio o actividad principal, originar, financiar, refinanciar, cerrar, vender ni administrar préstamos hipotecarios sobre bienes inmueble. De igual forma sostiene que el foro primario concluyó correctamente que los contratos de préstamo son válidos al amparo del Código Civil de 1930, vigente al momento de contraerse las obligaciones; que el TPI resolvió conforme a la prueba documental estipulada por las partes y que además, con respecto a los intereses excesivos aplicó correctamente el Artículo 1652 del Código Civil de 1930, 31 LPRA sec. 4594, en cuanto a la forma de hacer efectiva en un tribunal el importe del capital adeudado

A.

La Ley Núm. 247 de 30 de diciembre de 2010, ( Ley Núm.247-2010), mejor conocida como la *Ley para Regular el Negocio de Préstamos Hipotecarios de Puerto Rico*, 7 L.P.R.A. § 3051 *et seq.,* aplica a toda persona que se dedique parcial o totalmente al negocio de concesión de préstamos hipotecarios, al negocio de corretaje de préstamos hipotecarios, o a la originación de préstamos hipotecarios para todos los fines. La Ley Núm.247-2010 define el [n]egocio de concesión de préstamos hipotecarios como uno: […] mediante el cual se otorgan uno o varios adelantos en efectivo o su equivalente, hechos por un prestamista (comúnmente conocido como acreedor hipotecario) evidenciado por una escritura de constitución de hipoteca que grava debidamente uno o varios bienes

inmuebles, donde se fijan las condiciones y la forma de pago o liquidación del préstamo. 7 L.P.R.A. § 3051(w)

La Oficina del Comisionado de Instituciones Financieras (OCIF) es una entidad gubernamental que creó la Ley Núm. 4 de 11 de octubre de 1985, conocida como la *Ley de la Oficina del Comisionado de Instituciones Financieras* Entre las leyes administradas y reglamentadas por la OCIF se encuentra la Ley Núm. 247-2010, 7 LPRA sec.3051 *et seq.*,

En lo pertinente, el Artículo 1.2 de la Ley Núm.247-2010 contiene las siguientes definiciones aquí aplicables:

Artículo 1.2.-Definiciones

**(m)"Familia Inmediata**": el cónyuge o la cónyuge, los hijos, hermanos, padres, abuelos o nietos. Incluirá, además, a los padrastros, hijastros, hermanastros y las relaciones adoptivas
……
**(s)"Institución hipotecaria**": toda persona natural o jurídica **cuyo negocio o actividad principal es el de originar, financiar, refinanciar, cerrar, vender y administrar préstamos hipotecarios sobre bienes inmuebles**; además, actuar o servir como intermediario ofreciendo sus servicios a compañías de seguros, bancos, fideicomisos, fondos de pensiones y a otros individuos o entidades de inversión privada o gubernamental que invierten parcial o totalmente sus activos en préstamos hipotecarios o en la concesión de éstos para financiar o refinanciar la adquisición de bienes inmuebles localizados en Puerto Rico.
…..
**(u) Licencia:** la autorización escrita expedida por el Comisionado o su representante, mediante la cual se autoriza **a una persona a dedicarse al negocio de concesión de préstamos hipotecarios,** al negocio de corretaje de préstamos hipotecarios, o al de originación de préstamos hipotecarios, de acuerdo con las disposiciones de esta Ley.
……
**(w) Negocio de concesión de préstamos hipotecarios.-** El negocio mediante el cual se otorgan uno o varios adelantos en efectivo o su equivalente, hechos por un prestamista (comúnmente conocido como acreedor hipotecario) evidenciado por una escritura de constitución de hipoteca que grava debidamente uno o varios bienes inmuebles, donde se fijan las condiciones y la forma de pago o liquidación del préstamo. Incluye además, la administración de préstamos hipotecarios, según se define en el inciso (b) de esta sección.
….
**(dd) Persona**: cualquier persona natural que se dedique a la originación de préstamos hipotecarios o cualquier persona natural o jurídica, incluyendo, pero sin limitarse a, individuos, sociedades, corporaciones, fideicomisos, o cualquier otra entidad jurídica dedicada a cualesquiera actividades relacionadas a la concesión o corretaje de préstamos hipotecarios.

**(ee) Préstamo Hipotecario**: uno o varios adelantos en efectivo, o su equivalente, hechos por un prestamista (comúnmente conocido como acreedor hipotecario) evidenciado por una hipoteca, pagaré u otra evidencia de deuda acordada entre las

partes, que grava debidamente uno o varios bienes inmuebles, donde se fijan las condiciones y la forma de pago o liquidación del préstamo.

7 L.P.R.A. § 3051

El Artículo 1.3 de la Ley 247-2010 dispone expresamente que el estatuto aplicará "**a toda persona <u>que se dedique parcial o totalmente al negocio de concesión de préstamos hipotecarios o a la originación de estos</u>**, según definido en el Artículo 1.2 del Capítulo 1 de esta ley. 7 LPRA sec. 3051a (Énfasis suplido)

En lo pertinente al requisito de licencia, el Artículo 2.1 de la Ley Núm. 247-2010 dispone lo siguiente:

> Ninguna persona o individuo, excepto aquellas excluídas en las secs.3053, 3054 y 3055 de este título, podrá dedicarse al negocio de concesión de préstamos hipotecarios, al negocio de corretaje de préstamos hipotecarios o a la originación de préstamos hipotecarios en Puerto Rico, **sin antes obtener una licencia expedida bajo este capítulo por el Comisionado** como se dispone más adelante. 7 LPRA sec. 3052.

De igual forma, la "*Ley para Reglamentar el Negocio de Intermediación Financiera*" Ley Núm. 214 de 14 de octubre de 1995, según enmendada, 7 L.P.R.A. § 1071 et. seq., requiere también una licencia y solo regula el negocio de **intermediación financiera**. que se define como sigue:

> "Dedicarse a ofrecer servicios o a actividades de planificación, consultoría o asesoramiento financiero, concesión de préstamos, o corredor de préstamos y financiamientos que no sean préstamos hipotecarios sobre bienes inmuebles residenciales, mediante contacto personal, telefónico o escrito, o mediante anuncios en periódicos, publicaciones, hojas sueltas, rótulos, cruza calles, guía telefónica, radio, televisión o a través de cualquier otro medio similar, o prestar dichos servicios a una persona que no sea su pariente dentro del cuarto grado de consanguinidad o segundo grado de afinidad, y que la prestación de dichos servicios requiera el pago de un cargo por servicio por parte de la persona para quien se gestiona, tramita, planifica, concede u obtiene el préstamo o financiamiento o de un tercero por acuerdo entre las partes**" La exposición de motivos de la referida ley establece que a quien va dirigida la reglamentación, es**, al intermediario entre el que presta y el que toma prestado.

7 LPRA sec.1071 (j)

B.

El Art. 1631 del Código Civil de 1930, 31 LPRA Sección 4511, vigente al momento en que se otorgaron los préstamos en el caso que nos ocupa, definía el contrato de préstamo como sigue:

> Por el **contrato de préstamo**, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición devolver otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo.
> El comodato es esencialmente gratuito.
> **El simple préstamo puede ser gratuito o con pacto de pagar interés.**
> (Énfasis suplido)

Una vez se consuma el contrato de préstamo, nace la obligación del prestatario de devolver el dinero prestado en la fecha y lugar designado en el contrato, incluyendo el pago de los intereses devengados. Véase, Arts. 1124 y 1125 del Código Civil de Puerto Rico de 1930, 31 LPRA secs. 3174 y 3175.

De otra parte, cuando el contrato de préstamo incluye el pacto de intereses, el Artículo 1452 del Código Civil de 1930, 31 LPRA sec. 4594 dispone que estos intereses no pueden exceder los límites establecidos en el establecidos en el Artículo 1649 del Código Civil de 1930, 31 LPRA sec. 4591.

Las normas dirigidas a evitar el cobro de intereses usureros o excesivos, que sobrepasan las tasas máximas establecidas por ley, así como también las sanciones económicas a imponerse a aquellos que pretenden gestionar dicho cobro en los tribunales, se establecen en el Artículo 1452 del Código Civil de 1930, que en lo pertinente dispone expresamente lo siguiente:

> Excepto como queda autorizado por la sec. 4593 de este título, ninguna persona podrá exigir o recibir, directa o indirectamente, dinero o mercancías, **a un tipo de interés mayor por el préstamo o la prórroga del préstamo de algún dinero, que el tipo fijado por las secs. 4591 a 4599 de este título**. Nada de lo contenido en estas secciones se interpretará en el sentido de prohibir la venta de efectos al contado a un precio más bajo que al crédito.
>
> Ningún contrato en el cual se reserve, acepte o asegure, o se convenga en reservar, aceptar o asegurar, un tipo de interés mayor que el que se permite por las secs. 4591 a 4599 de este

título, podrá hacerse efectivo en un tribunal de Puerto Rico**, sino por el importe del capital adeudado; y el tribunal deberá, además, disponer en la sentencia condenando al deudor al pago del capital que el acreedor recobre solamente de su deudor el setenta y cinco (75) por ciento de dicho capital y que el veinticinco (25) por ciento restante sea adjudicado y recobrado por el Estado Libre Asociado de Puerto Rico**, quien podrá obtener mandamiento de ejecución, del mismo modo que el demandante, y sin preferencia sobre el montante adjudicado a éste, para hacer efectivo el veinticinco (25) por ciento así adjudicado.
Los derechos definidos en esta sección no son renunciables.

31 LPRA sec. 4594.

Por consiguiente, los intereses pactados de forma usurera no hacen nula la obligación reclamada ni tampoco impiden su cobro por la vía judicial. Ahora bien, solamente podrá hacerse efectivo el importe del capital adeudado. *Véase*, *J.E. Candal & Co. v. Rivera*, 86 DPR 508, 517 (1962). Es decir que, en su sentencia, además de condenar al deudor al pago del capital adeudado, el tribunal deberá disponer que el acreedor recobre únicamente el setenta y cinco por ciento (75%) de dicho capital, siendo el veinticinco por ciento (25%) restante adjudicado y recobrado por el Estado Libre Asociado. *Giráu v. González*, 73 DPR 410, 414-415 (1952).

En lo pertinente, en *Perdomo v. Sucn. Matilde Cintrón*, 114 DPR 126, 127 (1983) el Tribunal Supremo concluyó lo siguiente:

"Resolvemos en este caso que el poseedor de unos pagarés hipotecarios en que se fijan intereses en exceso de los permitidos por legislación sobre usura, cuyos intereses no han sido pagados por el deudor, se libera de las penalidades dispuestas, por el Art. 1652 del código civil, 31 LPRA sec. 4594, si al reclamar el pago de la deuda por vía judicial, limita su reclamación de intereses en la demanda al tipo de interés máximo que le sería dable recobrar bajo dicha legislación. La demanda así interpuesta constituye una renuncia efectiva al cobro de los intereses usurarios que le releva de penalidades en virtud del Art. del Código Civil, 31 LPRA sec. 4596

C.

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos

formuladas por el Tribunal de Primera Instancia. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. *Serrano v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en *Dávila Nieves v. Meléndez Marín*, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o

parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Íd.*, pág. 782.

La facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. *Íd.*

En lo referente a las apelaciones dirigidas a cuestionar la apreciación de la prueba efectuada por el foro primario, La Regla 19 del Reglamento del Tribunal de Apelaciones, en lo pertinente, establece lo siguiente:

> (A) Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba.
>
> (B) La parte apelante deberá acreditar, dentro del término de diez días siguientes a la presentación de la apelación, que el método de reproducción de la prueba oral que utilizará es el que propicia la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos. 4 LPRA Ap. XXII-B, R. 19.

Lo anterior responde a la norma de corrección que les cobija a las determinaciones consignadas por el foro primario en su sentencia las cuales dan base al principio de deferencia. En consecuencia, es imperativo que quien impugne dichas determinaciones o caracterice de erróneas la apreciación o suficiencia de la prueba, reproduzca la prueba que tuvo ante sí el foro sentenciador mediante cualquiera de los métodos aceptados para ello. En ese sentido, se debe cumplir de manera rigurosa los tramites prescritos en las leyes y reglamentos que rigen el perfeccionamiento de los recursos apelativos. *Isleta, LLC v. Inversiones Isleta Marina, Inc.*, 203 DPR 585, 590, (2019);

*Soto Pino v. Uno Radio Grp.*, 189 DPR 90, (2013); *Hernández Maldonado v. The Taco Maker, Inc.*, 181 DPR 281, 290 (2011). De no hacerlo, no se coloca al foro revisor en posición de ejercer adecuada y responsablemente su función revisora por lo que debe prevalecer la norma de deferencia y presunción de corrección a las determinaciones del tribunal primario *Morán v. Martí*, 165 DPR 356, (2005).

D.

Nuestro Tribunal Supremo ha reconocido que la práctica de los tribunales de solicitar a las partes que sometan proyectos de sentencia no es censurable *per se*. *Román Cruz v. Díaz Rifas,* 113 DPR 500 (1982). Los proyectos de sentencia son de utilidad para los magistrados, ya que les auxilia cuando se encuentran sobrecargados de causas judiciales que deben atender. *Baez García v. Cooper Labs., Inc.* 120 DPR 175 (1987). Estos proyectos constituyen un elemento de ayuda para los jueces, les sirven como punto de partida o documentos de trabajo en la elaboración de la determinación que decidan emitir finalmente. *Nieves Díaz v. González Massas*, 178 DPR 820,853 (2010).

El Canon 9 de Ética Judicial, 4 LPRA Ap. IV-B, dispone expresamente que las juezas y los jueces "[e]n cualquier asunto sometido a su consideración podrán, cuando a su juicio lo requieran los fines de la justicia, solicitar proyectos e sentencias, resoluciones u órdenes, los cuales se podrán utilizar como instrumento auxiliar.

Este Canon 9 no censura el uso de proyectos de sentencia, más bien reafirma que estos son instrumentos auxiliares para los jueces y las juezas. Ahora bien, el más Alto Foro ha reiterado que resulta práctica censurable e impropia el ¨firmar a ciegas¨ los proyectos de sentencia, ya que estos no pueden sustituir la labor de un juez de ¨desentrañar la verdad¨. *Nieves Díaz v. González*, supra, págs. 853-54. Es preciso, pues que cuando se trata de proyectos de sentencia los jueces se aseguren que las determinaciones de hechos incluidas en las sentencias reflejen fielmente los procedimientos que tuvieron lugar en el tribunal. Canon 9 de Ética Judicial, *supra*. Sabido

es que, la función adjudicativa de los jueces es indelegable, por ello se exige examinar de manera minuciosa y extensa los proyectos de sentencia, ya que usualmente la parte que los promueve intenta ¨salir por la puerta ancha¨ en el caso. *Nieves Díaz v. González*, supra, pág. 854.

III

En el **primer y segundo señalamiento de error**, los apelantes sostienen que incidió el foro primario al **no concluir** que el señor Rodríguez Crespo es un prestamista que mantiene una voluminosa y longeva actividad comercial al margen de la ley sin poseer licencia para tales negocios, expedida por el Gobierno de Puerto Rico y al no declarar nulos los tres préstamos hipotecarios objeto de las demandas al haber sido generados por un prestamista sin licencia  Los apelantes sostienen además, en su **quinto señalamiento de error** que el TPI incurrió en perjuicio y parcialidad al emitir sentencia sin considerar la prueba oral desfilada en el juicio. Por estar estrechamente relacionados con la apreciación de la prueba oral por parte del foro primario discutiremos estos tres señalamientos de error conjuntamente.

Como cuestión de umbral es preciso destacar que en el caso que nos ocupa las partes estipularon abundante prueba documental y que el foro primario celebró vista en la que delimitó la controversia del caso ante su consideración al aspecto exclusivo de si se cataloga o no al señor Rodríguez Crespo como prestamista al momento de realizar los préstamos y las consecuencias de tal determinación sobre la validez o invalidez de dichos préstamos.  Con esos fines, el foro primario celebró juicio es sus méritos el 30 de agosto de 2023 y allí prestó testimonio el señor Rodríguez Crespo. En lo pertinente al primer, tercer y quinto señalamiento de error de los apelantes, enfatizamos que en la Sentencia apelada el foro primario concluyó expresamente lo siguiente:

> Examinado el testimonio de Don Santos Rodríguez Crespo, **la única prueba presentada por los demandados para establecer que este necesitaba tener licencia para prestar, a la luz de las leyes antes discutidas, forzoso es concluir que este no es el prestamista que regulan esas leyes**. Del testimonio bajo juramento de Don Santos Rodríguez Crespo

no surge que este se dedicara y o tuviera como **"negocio o actividad principal** … el de originar, financiar, refinanciar, cerrar, vender y administrar préstamos hipotecarios sobre bienes inmuebles" **De su testimonio, al cual damos entera credibilidad, lo que surge es que es un comerciante que tuvo negocio de gas fluido el cual actualmente rentó y recibe renta de casas de su propiedad. Su ingreso principal no proviene del negocio de prestamista. En adición, los préstamos que hiciera a su familia estarían excluidos de las disposiciones de esa ley**. (7 L.P.R.A. § 3051, inciso m)

De lo anterior se desprende que las conclusiones de derecho en la Sentencia apelada están basadas en la credibilidad que el foro primario dio al testimonio del señor Rodríguez Crespo.  De ahí que ante la ausencia de prueba que demostrara que el señor Rodríguez Crespo fuera prestamista el TPI concluyó correctamente a base de su testimonio que este no necesitaba licencia alguna para otorgar los préstamos con garantía hipotecaria a los apelantes ya que no se dedicaba al negocio de prestar dinero y sostuvo la validez de dichos préstamos

Los señalamientos de error primero, segundo y quinto de los apelantes están estrechamente relacionados con la apreciación de la prueba oral por parte del foro primario.  Mediante estos, los apelantes cuestionan la credibilidad que le mereció al TPI el testimonio del señor Rodríguez Crespo, así como su valor probatorio para determinar que este no se dedica al negocio de conceder préstamos y para concluir que el señor Rodríguez Crespo no es prestamista por lo que ninguna ley le requería poseer licencia para otorgar los contratos de préstamo con los apelantes .

No obstante, a pesar de esbozar tres señalamientos de error en el que se cuestiona la apreciación de la prueba oral por parte del foro primario los apelantes se encuentran en abierto incumplimiento con la Regla 19  del Reglamento de este Tribunal de Apelaciones, que dispone y requiere reproducir la prueba testifical  mediante la presentación de una transcripción, exposición estipulada o una exposición narrativa de la prueba, cuando, como en el presente caso, lo que se impugna es la apreciación de la prueba oral desfilada y aquilatada por el TPI y su suficiencia para dictar la sentencia apelada. Regla 19 (A) del Reglamento

del Tribunal de Apelaciones. En esencia, la Regla 19 inciso (B) requiere a la parte apelante en estos casos, acreditar dentro de los diez (10) días siguientes a la presentación de la apelación que método de reproducción de la prueba oral utilizará. Ante dicho incumplimiento por parte de los apelantes es forzoso concluir que estos no han colocado a este Tribunal de Apelaciones en posición de atender los señalamientos de error primero, segundo y quinto en los cuales los apelantes cuestionan la credibilidad atribuida por el TPI al testimonio del señor Rodríguez Crespo, la cual surge de las determinaciones de hecho de la Sentencia apelada, así como a su valor probatorio para concluir finalmente que este no es prestamista, por lo que no se le requería tener licencia para otorgar los contratos de préstamo. Por consiguiente, sobre dichos señalamientos de error resolvemos conforme a la norma de deferencia a la apreciación de la prueba oral por parte del foro primario y a la credibilidad que le mereció al TPI el testimonio del señor Rodríguez Crespo.

Al carecer de una transcripción o algún otro método de reproducción de la prueba oral que nos permita evaluar los testimonios desfilados ante el TPI estamos impedidos de evaluar la apreciación de la prueba oral que tuvo ante su consideración el foro primario. **Esto tiene como efecto que no podamos atender en los méritos los errores primero, segundo y quinto de los apelantes toda vez que están basados cuestionamientos pertinentes a la forma en que el TPI apreció la prueba oral desfilada**. Conforme con estos principios, concluímos que no incidió el foro primario al concluir que el señor Rodríguez Crespo no es prestamista por lo que ninguna ley le requería poseer licencia para otorgar los contratos de préstamo con los apelantes. Por consiguiente, tampoco erró el TPI al resolver que para adjudicar las demandas en cobro de dinero y ejecución de hipoteca presentada por el señor Rodríguez Crespo en contra de los apelantes, así como al cobro de los intereses, procedía acudir al Código Civil de 1930, vigente al momento de constituirse las obligaciones prestatarias.

En este caso existen tres contratos de préstamos válidos al amparo del Artículo 1631 del Código Civil de 1930, 31 LPRA sec. 4511, toda vez que están presentes todos los requisitos para su validez. El señor Rodríguez Creso prestó el total de **$491,700.00** de principal en los tres préstamos y el señor Galio Nido, como deudor, aceptó que recibió el importe de los tres préstamos y obtuvo el capital en préstamo de **$491,000.00** dólares en la totalidad de los préstamos.

En su tercer señalamiento de error, los apelantes sostienen en cuanto a la usura que incidió el TPI al no declarar nulos los préstamos que fueron generados a un interés legal usurero. Reiteramos que surge de la *Resolución* de 17 de marzo de 2022, que el Hon. Harry E. Rodríguez Guevara decretó como Usureros los Préstamos Hipotecarios, por los montos de **$160,000.00 y $240,000.00** y en cuanto a estos se aplicó la penalidad **establecida en el Artículo 1652 del Código Civil, pagando el 75% del principal al señor Rodríguez Crespo y el 25% del principal al ELA, por dichos préstamos hipotecarios.**

El hecho de que los intereses de un préstamo sean decretados usureros no hacen nula la obligación reclamada ni tampoco impiden su cobro por la vía judicial. Su única consecuencia es que solamente podrá el acreedor hacer efectivo el importe del 75% capital adeudado, y los intereses que no excedan el interés legal**.** *Véase* Art. 1649 del Código Civil de 1930, (31 L.P.R.A. sec. 4591) *J.E. Candal & Co. v. Rivera,* 86 DPR 508, 517 (1962)  En la Sentencia apelada, el foro primario ordenó el pago del 75% de la suma adeudada y de los intereses que no excedían el interés legal, **así como el pago del 25% del principal al ELA, por dichos préstamos hipotecarios,** conforme a lo dispuesto  en el Artículo 1652 del Código Civil  de 1930.  Por todo lo anterior, a tenor con este mandato estatutario del Artículo 1649 del Código Civil de 1930, *supra,* concluimos que el foro primario no incurrió en el tercer error señalado por los apelantes.

En su cuarto señalamiento de error los apelantes sostienen que mediante la sentencia apelada el foro primario violentó la Ley del Caso

según establecida en una Resolución previa del foro primario que adjudicó las respectivas solicitudes de sentencia sumaria presentadas por las partes.

Precisamente, mediante *Resolución* emitida el 17 de marzo de 2022, el foro primario decretó como usureros los Préstamos Hipotecarios, por los montos de **$160,000.00 y $240,000.00** y ordenó la celebración de la vista evidenciaria para determinar la suma total de los pagos de intereses ilegales realizados por la parte demandada a la parte demandante, los que se descontarían al principal adeudado. En cuanto a estos dos préstamos resolvió, además, que procedía aplicar la penalidad establecida en el Artículo 1652 del Código Civil, pagando el 75% del principal al demandante y el 25% del principal al ELA, por estos préstamos hipotecarios  Igualmente, mediante la aludida *Resolución* de 17 de marzo de 2022, el TPI declaró No Ha Lugar la Solicitud para que se declarara la nulidad de los pagarés hipotecarios fundamentada en que el señor Rodríguez Crespo debía ser catalogado como prestamista sin licencia al momento de realizar los préstamos.  Sobre estos extremos, el foro primario determinó que existía controversia referente a si el señor Rodríguez Crespo debía o no ser catalogado como prestamista.

Para dilucidar esa controversia el TPI señaló vista para el 30 de agosto de 2023.  Celebrada la vista, en la que declaró el señor Rodríguez Crespo, el TPI concluyó a base de la credibilidad que le mereció su testimonio que este no era prestamista, por lo que ninguna ley le requería tener licencia, para otorgar los préstamos, los cuales declaró válidos conforme a las disposiciones del Código Civil de 1930. Así las cosas, concluimos que conforme al tracto procesal del caso nos ocupa el foro primario tampoco incurrió en cuarto error señalado por los apelantes.

En su sexto y séptimo señalamiento de error los apelantes sostienen que en la Sentencia apelada el foro primario ignoró la evidencia documental y que incidió al dictar sentencia en su contra luego de haberles solicitado un proyecto de sentencia.

Es preciso destacar que la prueba documental en la que el foro primario basó la Sentencia apelada fue estipulada por las partes, incluyó los recibos de pago y así lo hizo constar el TPI en la Sentencia. La controversia que tenía el foro primario ante su consideración en el caso de epígrafe según fue delimitada anteriormente era si el señor Rodríguez Cintrón era o no prestamista al momento de realizar los préstamos y las consecuencias sobre la validez de éstos así como de los intereses usureros. Ambos asuntos fueron resueltos por el TPI.

Finalmente, la contención de los apelantes referente a que el foro primario incidió al emitir sentencia en su contra luego de haberles solicitado un proyecto de sentencia no encuentra apoyo en nuestro ordenamiento jurídico. Precisamente, cuando se trata de proyectos de sentencia los jueces deben asegurarse de que las determinaciones de hechos incluidas en las sentencias reflejen fielmente los procedimientos que tuvieron lugar en el tribunal. Del Canon 9 de Ética Judicial, *supra*, se desprende que el proyecto de sentencia es un instrumento auxiliar y que el hecho de que un juez solicite a alguna parte un proyecto de sentencia no acarrea que este será resuelto a favor de quien lo somete

Con estos antecedentes, concluimos que el foro primario no incurrió en lo errores señalados por los apelantes en el recurso de epígrafe

IV

Por los fundamentos anteriormente expuestos, los cuáles hacemos formar parte de esta Sentencia, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones